[Civil No. 3960. Filed April 25, 1938.]

[78 Pac. (2d) 989.]

COUNTY OF MARICOPA, a Body Politic and Corporate, Appellant, v. G. A. RODGERS, Judge of the Superior Court of Maricopa County, Arizona; C. W. PETERSON, GEORGE FRYE, and JOHN A. FOOTE, as Members of the Board of Supervisors of Maricopa County, Arizona, Appellees.

Mr. John W. Corbin, County Attorney, and Mr. Lin H. Orme, Jr., his Deputy, for Appellant.

Messrs. Townsend & Jenckes, Mr. Stanley A. Jerman, Messrs. Baker & Whitney, Mr. Lawrence L. Howe, Messrs. Struckmeyer & Flynn, Mr. Herman Lewkowitz, Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, Messrs. Minne & Sorenson and Messrs. Cox & Moore, for Appellee Rodgers.

LOCKWOOD, J.—The County of Maricopa, hereinafter called plaintiff, brought suit against G. A. Rodgers, one of the judges of the superior court of the state of Arizona, in and for Maricopa county, and C. W. Peterson, George Frye, and John A. Foote, as members of the board of supervisors of said county, hereinafter called defendants, under the provisions of section 790, Revised Code of 1928, to recover certain money which it was alleged the supervisors had, without authority of law, paid out of the county treasury to defendant Rodgers. The facts set up by the complaint and necessary for a determination of this action are in nowise in dispute, and were agreed upon by the parties to be as follows:

The superior court of Maricopa county, as it is commonly, though not strictly legally, called, during

all the times involved in this action, had four members. Judges PHELPS, SPEAKMAN, and NILES were elected in November, 1930, taking office on the first Monday in January, 1931, and held office under such terms continuously from the said first Monday in January, 1931, to the first Monday in January, 1935, at which time, all of them having been re-elected to their positions in the fall of 1934, began new terms of office. Defendant Rodgers was elected to his office in November, 1932, succeeding Judge JENCKES, and his term commenced on the first Monday in January, 1933, and ended on the first Monday in January, 1937. At the time the three judges took office in 1931, the salary fixed for each member of the superior court of Maricopa county was $5,500 per year, and this continued to be the salary fixed by law when defendant Rodgers took office in 1933. At that time, therefore, all of the judges of the superior court of Maricopa county were drawing the same salary, to wit, $5,500 per year. The legislature, by chapter 41 of the Session Laws of 1933, which was adopted after defendant Rodgers took office in January, 1933, while the other three judges were in the middle of their four-year terms, to take effect the first Monday in January, 1935, reduced the salary of the judges of the superior court of Maricopa county to $4,400 per year. Judges PHELPS, SPEAKMAN, and NILES were paid during their terms, beginning on said first Monday in January, 1935, at the rate of $4,400 per year, under chapter 41, *supra*, it being admitted that this was the salary due them. Defendant Rodgers, however, insisted that, notwithstanding his associates were drawing their salary at a lessened rate, he was entitled to continue drawing a salary at the rate of $5,500 per year until his term expired. The other defendants paid defendant Rodgers the salary at the rate insisted upon by him for the years 1935 and 1936,

but a doubt arising in their minds as to the legality of this, the county brought suit under section 790, *supra,* to recover all of what it claimed to be excess payment of salary to defendant Rodgers. A demurrer was interposed to the complaint, so far as all payments made more than one year before the filing of the complaint was concerned, on the ground that the statute of limitations had run against the county. (Revised Code of 1928, § 2058, subd. 3.) This plea was sustained by the court, and the only issue remaining was the amount which had been paid within the year. After considering the matter, the superior court held that chapter 41, *supra,* was unconstitutional, illegal, and void, in that it contravened section 24 of article 6 of the Constitution of Arizona, and was, therefore, unconstitutional, at least in so far as it applied to defendant Rodgers, and the county has brought this matter before us for review.

So far as the statute of limitations is concerned, we have recently decided in the case of *City of Bisbee* v. *Cochise County, ante,* p. 1, 78 Pac. (2d) 982, just decided, after an exhaustive consideration of the entire question, that where the recovery of public money due a political subdivision of the state is concerned, the rule of *nullum tempus occurrit regi,* as reiterated and confirmed by the legislature in section 2056, Revised Code of 1928, applies, and that the plea of the statute of limitations may not be made against such a claim. It is not necessary for us, in this opinion, to repeat what was said in the case just cited, but we necessarily hold the plea of the statute of limitations should have been overruled.

The sole remaining question then is, Was Judge RODGERS entitled to be paid during the period above referred to at the rate of $4,400 per year, or, as he claims, at the rate of $5,500 per year, under the

facts as stated above? The answer depends upon the construction of section 24, article 6, and section 17, part 2 of article 4, of the Constitution. The first section referred to reads as follows:

"No change made by the legislature in the number of judges shall work the removal of any judge from office; and no judge's salary shall be reduced during the term of office for which he was elected."

The second originally read as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

In the case of *County of Greenlee* v. *Laine,* 20 Ariz. 296, 180 Pac. 151, 153, we had under consideration the question of the meaning and effect of section 24, *supra,* and we held that section 17, *supra,* contained the "real intent of the framers of the Constitution and the people who voted for it," in regard to salary changes under ordinary circumstances, while section 24, *supra,* was inserted only for the purpose of protecting judges against a lessening of salary through a change in the number of judges, as provided by sections 2 and 5 of article 6.

At the time of the adoption of the Constitution, there was but one judge of the superior court in each county, and all of the other officers, state, county and precinct, were elected at the same time and for two-year terms. There were two bodies, however, where this was not true, the Supreme Court and the corporation commission. Their members, after the usual period required for. adjustment after the first election, held for terms of six years each, and were elected one every two years. To these two bodies was shortly thereafter added by statute the tax commission, whose

members held for the same term and were elected at different times. The business of the superior court of Maricopa county grew and its members were, by 1928, increased in number from one to four. So long as the original salaries fixed by the Constitution and by law remained in effect, there was no discrimination in the amount paid the different members of the Supreme Court, the corporation commission, the tax commission, and the judges of the superior court of Maricopa county. In 1927, however, the legislature adopted an act increasing the salaries of members of the Supreme Court, and in 1929 increased state salaries generally. It was immediately apparent that the practical working of such increase, under the provisions of section 17, *supra,* as they then existed, was discriminatory in the highest degree. The three members of the Supreme Court, performing exactly the same labor and with equal duties and authority, would shortly receive different salaries; the same was true of the corporation commission, the tax commission, and the judges of the superior court of Maricopa county, and this discrimination was bound to continue for at least four years, while with every new salary change a similar situation would arise. The injustice of this condition was recognized immediately, but under the Constitution, as it stood, it was impossible for the legislature to remedy it. A constitutional amendment was, therefore, prepared, adopted by the legislature, and submitted to the people for their approval at the general election in 1930. The publicity pamphlets which were required by law, and which carried the amendment, stated at length the reason therefor was to provide that whenever the salary to be paid to a court, board, or commission was either raised or lowered, and the change became effective as to any one member, it should, notwithstanding the language of the previous portion of section 17, *supra,*

become effective as to each and all of such members. Section 17, as amended, then read as follows:

"The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office, provided, however, that when any legislative increase or *decrease* in compensation of the members of any court, board or commission, composed of two or more officers or persons, whose respective terms of office are not coterminous, has heretofore or shall hereafter become effective as to any member of such court, board, or commission, it shall be effective from such date as to each of the members thereof." (Italics ours).

There can be no doubt as to the purpose of the constitutional amendment or the meaning to be attributed to it, for it was fully discussed in the legislature, in the publicity pamphlets, and by many public arguments made during the campaign. Whatever may be said as to the relative meaning and effect of such section 17, *supra,* as it originally existed, and section 24, *supra,* there can be no question but that both the legislature and the people of Arizona adopted the amendment to section 17 above set forth for the express purpose of insuring that all members of a court, board, or commission composed of more than one person, who were doing, in substance, the same work, should at all times receive the same salaries.

The first effect of the amendment, as it happened, was to *increase* the salaries of certain officers before the increase provided by law would otherwise have taken effect, among these being Judge JENCKES, the predecessor in office of Judge RODGERS, but its framers had realized that justice required that future *decreases* should take effect in the same manner as *increases,* and the amendment expressly so stated.

In 1933 the legislature, realizing the tremendous drop in private wages, salaries, and prices which had occurred in the preceding three years, considered it advisable that the salaries of public officers, which had been raised during the time of prosperity, should be lowered like private incomes during the time of adversity, and chapter 41, *supra,* provided for a horizontal cut of 20 per cent. for all state salaries, including the judges of the superior courts of the state. Under the Constitution, since none of the state officers would be elected again until the fall of 1934, these cuts could not affect any of the incumbents until the first Monday in January, 1935, and the legislature, recognizing that fact, expressly provided that the law should take effect at that time. This, however, would have been the legal result even had there been no reference in the chapter to the time it took effect.

One of the judges of the Supreme Court had been re-elected in 1934, and since the changed salary undoubtedly took effect as to him, under the amendment of 1930 it automatically took effect as to his two associates, although their terms still had, respectively, two and four years to run, and the lowered salary was paid to and accepted by them without a question. The same rule was applied to the corporation commission and to the tax commission. It is urged, however, by defendant Rodgers that this rule should not be applied to him, and the other defendants, the supervisors, did not apply it for two years, he being paid at the rate of $5,500 per year, while his three associates, doing the same work and having the same powers, were being paid at the rate of $4,400 per year.

If any effect whatever is to be given to the specific language of the amendment to section 17, *supra,* the past decisions of this court, and the undoubted intent of both the legislature and the people of Arizona when they adopted that amendment, there can be no possible

question that defendant Rodgers was paid a sum in excess of that to which he was entitled by law as judge of the superior court.

It is urged that the provision as applied to him is arbitrary and discriminatory, is class legislation, and in conflict with the Fourteenth Amendment to the Constitution of the United States. Wherein the determination of amount of salary to be paid by a state to one of its officers can, under any conceivable circumstance, violate the Fourteenth Amendment to the Constitution of the United States, is beyond our comprehension, and we think that a law which provides that officers doing the same work, holding the same position, and having the same powers shall at all times be paid equal compensation, is the opposite of an arbitrary and discriminatory enactment. It would seem to us that, if defendant Rodgers is to be permitted to draw a different salary from that of his associates, such a law would rather be an unreasonable, arbitrary, and unfair discrimination against the other three judges, and in favor of the defendant. But, be this as it may, the legislature has undoubtedly the power to fix the salaries of public officers at any amount, reasonable or unreasonable, discriminatory or not discriminatory, which it may see fit, unless prohibited by some provision of the Constitution of Arizona, and, as we have indicated, the Constitution not only does not prohibit uniformity of salaries in offices like that of defendant Rodgers, but specifically commands it.

Since chapter 41, *supra,* is constitutional, the salary due defendant Rodgers, according to law, during the period under consideration was at the rate of $4,400 per year, and not $5,500, and since admittedly he has been paid by the supervisors at the latter rate, such an excess was, within the meaning of section 790, *supra,* "paid without authority of law."

The judgment of the superior court of Maricopa county is reversed, and the case remanded, with instructions to enter judgment for the plaintiff, in accordance with the conclusions set forth herein.

McALISTER, C. J., and ROSS, J., concur.