858 P.2d 654

**Ralph G. SMITH, Plaintiff–Appellant,**

v.

**CITY OF PHOENIX, Defendant–Appellee.**

Court of Appeals of Arizona, Division 1, Department E.

Dec. 17, 1992.

Reconsideration Denied Feb. 4, 1993.

Review Denied Oct. 5, 1993.

510

Ulrich, Thompson & Kessler, P.C. by Paul G. Ulrich and Kent Feuerhelm, Phoenix, for plaintiff-appellant.

Roderick G. McDougall, Phoenix City Atty. by Alan S. Max, Asst. Chief Counsel, and Marvin A. Sondag, Asst. City Atty., Phoenix, for defendant-appellee.

## OPINION

KLEINSCHMIDT, Judge.

Ralph G. Smith, a judge of the Phoenix City Court, appeals from the entry of a summary judgment for the City of Phoenix on his claims for declaratory relief and contract damages. The issues stem from the method by which the Phoenix City Council appoints and pays the Chief Presiding Judge of the Municipal Court of the City of Phoenix and changes the city has made in the way municipal judges are paid. We affirm the grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

The Phoenix City Council appointed Ralph G. Smith to be a judge of the Phoenix City Court in 1976. He was reappointed to three successive four-year terms.

Under Phoenix, Ariz., City Charter Ch. 8, § 4 (1913), the city council appoints one city court judge to serve as chief presiding judge for a one-year term. In 1982, the city council appointed Phoenix City Court Judge M. Louis Levin, who is not a party to this litigation, as chief presiding judge. He took separate oaths of office for the positions of city court judge and chief presiding judge. Judge Levin was reappointed as chief presiding judge annually through September 26, 1990.

Pursuant to Phoenix, Ariz., City Code art. III, § 2–83 (1978), the chief presiding judge is the administrative head of the city court. He has a number of specifically enumerated duties, including the assignment of judges to the various divisions of the court, the appointment and removal of court officers and personnel other than judges, the preparation and administration of the annual budget, the adoption of regulations for the internal administration of the court, and the designation and delegation of duties to an assistant chief presiding judge. According to Judge Smith, over the period of time at issue in this case, Chief Presiding Judge Levin was never assigned as judge of a particular court division, never presided over a trial, never handled a regular court docket or arraignment docket, and never took a plea on the record. Judge Smith also asserts that Chief Presiding Judge Levin has worked about the same number of hours as do other city court judges.

The city court judges, including the chief presiding judge, are paid pursuant to Phoenix City Code art. III, § 2–83.1, which provides that "the salary of the presiding judge of the Municipal Court of the City of Phoenix shall be in an amount as provided for by the Council of the City of Phoenix and, in addition thereto, the presiding judge shall be entitled to the same fringe benefits as provided for in the executive pay plan of the City of Phoenix." Since 1983, the chief presiding judge's salary has exceeded the salaries of all other Phoenix city court judges, including Judge Smith's salary. Between 1983 and 1990, the chief presiding judge received a total of $77,571.80 more in salary than Judge Smith received and $10,-880.00 in additional transportation allowances, with other miscellaneous additional fringe benefits. This salary differential will also eventually yield a differential in retirement benefits between the chief presiding judge and Judge Smith.

In July of 1988, Judge Smith was appointed to his fourth term as a city court judge. Under the Phoenix City Code provision then in effect, salaries for judges of the city court were set at 95% of the annual salaries of judges of the Superior Court of Arizona, as provided for by Ariz.Rev.Stat. Ann. ("A.R.S.") § 41–1904. Pursuant to Ariz. Const. art. V, § 13 and A.R.S. § 41–1904, the legislature raised superior court judges' annual salaries to $80,000.00. This legislation became effective September 30, 1988, with the raises to begin on January 1, 1989.

On September 28, 1988, two days before the effective date of the legislation, the Phoenix City Council amended section 2–83.1 to fix the annual salaries of city court judges at $66,500.00. As a result, Judge Smith's salary did not increase to $76,-000.00 (95% of $80,000.00) on January 1, 1989, but remained at $66,500.00. Then, on February 8, 1989, the Phoenix City Council amended section 2–83.1 to raise city court judges' annual salaries to $73,000.00 and to index the salaries at 90% of superior court judges' salaries for the future. If the council had retained the 95% indexing, Judge Smith would have received additional salary of $6,266.68 through October 31, 1990.

In April of 1989, Judge Smith filed and served on the City of Phoenix a claim for additional compensation. The city denied the claim, and Judge Smith brought this action for declaratory relief and contract damages in December 1989. The parties filed cross-motions for summary judgment. After argument, the superior court denied

Judge Smith's motion and granted summary judgment for the city. Judge Smith timely appealed.

### The Challenge to the City Code Based Upon a Claimed Violation of Separation of Powers is not Properly Before Us

Judge Smith contends that the differential salary and benefits scheme created by Phoenix City Code art. III, § 2–83.1 violates the separation of powers doctrine found in article III of the Arizona Constitution. He argues that because the chief presiding judge is appointed by the city council for a one-year term, and because the office carries with it substantial additional pay, the city council is in a position to apply pressure on the chief presiding judge to influence his decisions regarding judicial administration. *See Winter v. Coor*, 144 Ariz. 56, 695 P.2d 1094 (1985) (appointed judge's tenure of less than two years is unconstitutional).

■ Judge Smith makes this argument in support of his claim that he is entitled to higher pay. He has never, however, sought a declaratory judgment to the effect that the method of appointing the chief presiding judge must cease. We will not determine constitutional issues "unless they are squarely presented in a justiciable controversy, or unless a decision is absolutely necessary in order to determine the merits of the suit." *School District No. 26 (Bouse Elem.) of Yuma County v. Strohm*, 106 Ariz. 7, 9, 469 P.2d 826, 828 (1970).

If we assume for the sake of argument that the scheme for selecting the chief presiding judge is an unconstitutional violation of the separation of powers, the relief that Judge Smith seeks is not an appropriate remedy. First, the remedy of equalizing the pay of all city judges to the same level as that of the chief presiding judge would not cure the problem of undue influence by the administration created by the fact that the term of the chief presiding judge is for just one year. Second, even if equalizing the judges' pay could partially alleviate the problem, there are other ways to achieve that end. For example, instead of increas-

ing the pay of all judges, the city council might find it more palatable to reduce the pay of the chief presiding judge to the pay level of all other judges. The point is that the remedy that Judge Smith seeks is only one among other possible cures, and would only be a partial cure at that. He has not sought the alternative relief, and he has not sought a declaratory judgment on the issue of separation of powers. For this reason, we do not address whether the city code violates the separation of powers clause of the Arizona Constitution.

### The City Code does not Violate the Provision of the Arizona Constitution Relating to Equal Compensation

■ Judge Smith next argues that the city's differential judicial salary and benefits scheme violates the requirement of Ariz. Const. art. IV, pt. 2, § 17 that any increase in the compensation of the judges of any court composed of two or more members with staggered terms must apply to all of them as soon as it becomes effective as to any one of them. The full text of section 17 is as follows:

> The Legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer, other than a justice of the peace, be increased or diminished during his term of office; *provided, however, that when any legislative increase or decrease in compensation of the members of any court or the clerk thereof, or of any board or commission composed of two or more officers or persons whose respective terms of office are not coterminous, has heretofore or shall hereafter become effective as to any member or clerk of such court, or any member of such board or commission, it shall be effective from such date as to each thereof.*

(Emphasis added.) The italicized language was added by vote of the people at the general election of November 4, 1930.

The full text of section 17 makes clear that its original focus was to forbid the legislature either to raise or lower the salary of a judge during the judge's term of office. *See County of Maricopa v. Rodgers*, 52 Ariz. 19, 78 P.2d 989 (1938). As the *Rodgers* court observed, in 1927 and 1929 the legislature enacted the first pay increases for members of state boards, courts or commissions since the Arizona Constitution was adopted. As the court explained:

> So long as the original salaries fixed by the Constitution and by law remained in effect, there was no discrimination in the amount paid the different members of the Supreme Court, the corporation commission, the tax commission, and the judges of the superior court of Maricopa County. In 1927, however, the legislature adopted an act increasing the salaries of members of the Supreme Court, and in 1929 increased state salaries generally. It was immediately apparent that the practical working of such increase, under the provisions of section 17, *supra*, as they then existed, was discriminatory in the highest degree. The three members of the Supreme Court, performing exactly the same labor and with equal duties and authority, would shortly receive different salaries.... The injustice of this condition was recognized immediately, but under the Constitution, as it stood, it was impossible for the legislature to remedy it. A constitutional amendment was, therefore, prepared, adopted by the legislature, and submitted to the people for their approval ... in 1930.

52 Ariz. at 24, 78 P.2d at 991. It was against that background that the *Rodgers* court stated:

> the people of Arizona adopted the amendment to section 17 ... *for the express purpose of insuring that all members of a court, board, or commission composed of more than one person, who were doing, in substance, the same work, should at all times receive the same salaries.*

*Id.* at 25, 78 P.2d at 991–92 (emphasis added).

Contrary to Judge Smith's contention, neither the proviso added to section 17 in 1930 nor *Rodgers* establishes the proposition that "all judges of the same court [must] be compensated equally" under all circumstances. Instead, as *Rodgers* makes clear, the proviso was directed solely at curing the specific problem the original text of section 17 created when applied to members of state bodies with staggered terms of office, i.e., that judges or officers whose terms would shortly be renewed would receive any salary increase or absorb any salary decrease immediately, while those whose terms had substantial time remaining would have to forgo the increase or could avoid the decrease until their new terms began, however long that might be.

Judge Smith asserts that the *Rodgers* court undoubtedly understood that not all members of Arizona courts performed precisely the same tasks or duties, and that some courts' individual members engaged primarily in administrative work. Focusing on the *Rodgers* court's description of members of the supreme court as "performing exactly the same labor and with equal duties and authority," 52 Ariz. at 24, 78 P.2d at 991, Judge Smith in effect contends the supreme court determined that administrative and adjudicatory functions constituted "in substance, the same work," for which the members of a court "should at all times receive the same salaries" pursuant to section 17. *Id.* at 25, 78 P.2d at 991. We disagree.

Judge Smith's construction of *Rodgers* would apply its language to resolve an issue that was neither presented by its particular facts nor explicitly considered by the court. Moreover, as we have held, the history of section 17 and its treatment in *Rodgers* belie the broad interpretation Judge Smith seeks to attach to it. Section 17 is simply inapplicable in a case like this, which does not concern an across-the-board salary increase or decrease for the members of a court with staggered terms of office, but rather concerns the practice of

differently valuing and compensating distinct varieties of judicial duties. We find that Phoenix City Code art. III, § 2–83.1 does not violate art. IV, pt. 2, § 17 of the Arizona Constitution.

### The Amendments to the City Code were not an Unconstitutional Impairment of Contract and did not Unconstitutionally Reduce the Judge's Salary During his Term of Office

■ From July 2, 1977, through September 28, 1988, salaries for judges of the city court were set at 95% of the annual salaries of judges of the Superior Court of Arizona. Former Phoenix City Code art. III, § 2–83.1 (1978). Judge Smith was appointed to his fourth term as city court judge on July 6, 1988. State legislation that became effective September 30, 1988, raised annual salaries for superior court judges to $80,000.00 as of January 1, 1989. Under the version of section 2–83.1 that was in effect until September 28, 1988, the salaries of Judge Smith and the other Phoenix City Court judges would have risen automatically to 95% of $80,000.00, or $76,-000.00, on January 1, 1989. However, effective September 28, 1988, the Phoenix City Council amended section 2–83.1 to fix city court judges' salaries at $66,500.00, and again on February 8, 1989, to raise them to $73,000.00 and set them for the future at 90% of superior court judges' salaries.

Judge Smith contends that this violated the contract clauses of the United States and Arizona Constitutions, U.S. Const. art. I, § 10 and Ariz. Const. art. II, § 25. Relying on *Olson v. Cory,* 27 Cal.3d 532, 178 Cal.Rptr. 568, 636 P.2d 532 (1980), *aff'd on other grounds,* 35 Cal.3d 390, 197 Cal.Rptr. 843, 673 P.2d 720 (1983) (appeal from decision after remand); *Coate v. Omholt,* 203 Mont. 488, 662 P.2d 591 (1983); and *Godbey v. Roosevelt School Dist. No. 66,* 131 Ariz. 13, 638 P.2d 235 (App.1981), Judge Smith reasons that on the commencement of his "employment contract" on July 6,

1988, he acquired a vested right to receive a salary throughout his four-year term calculated on the 95% formula, and that the Phoenix City Council unconstitutionally impaired his contract rights by altering this formula. On similar reasoning, Judge Smith further argues that the council's amendments to Phoenix City Code art. III, § 2–83.1 reduced his compensation during his term of office and therefore violated Ariz. Const. art. VI, § 33 [1] and art. IV, pt. 2, § 17.

The city relies on *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980), for the argument that Judge Smith and his fellow city court judges had no vested right to salaries computed under the 95% formula unless and until those salaries actually became effective by operation of law. The city contends that because it scrapped the 95% formula before the effective date of the state legislation that would have triggered its operation, Judge Smith never acquired the right to a salary adjustment under the 95% formula, and accordingly there was never any unconstitutional reduction in his compensation or impairment of his contract rights.

We find no constitutional defect in the city's 1988 and 1989 amendments to Phoenix City Code art. III, § 2–83.1. Judge Smith's alternative challenges depend on the proposition that as of the beginning of his term of office on July 6, 1988, he had a vested contractual right to receive, throughout his term, salary increases based on the formula in effect on July 6, 1988. However, nothing in the documents Judge Smith characterizes as his "contract of employment" with the city objectively manifests assent of the parties that the method of calculating his salary would remain fixed throughout his term. Indeed, the fact that both parties knew his salary was established by a city ordinance, which was naturally subject to change by the city council, suggests just the opposite.

*Coate,* 662 P.2d at 591, on which Judge Smith relies, concerned forfeiture of portions of existing, earned judicial salaries as

---

1. Ariz. Const. art. VI, § 33 provides: "No change made by the Legislature in the number of justices or judges shall work the removal of any justice or judge from office. The salary of any justice or judge shall not be reduced during the term of office for which he was elected or appointed."

a penalty for failure to meet a statutory deadline for reaching decisions. No mere prospective alteration of the method by which judicial salaries would be calculated in the future was at issue in that case. *Coate* is inapposite.

*Olson,* 178 Cal.Rptr. at 568, 636 P.2d at 532, on which Judge Smith also relies, concerned an automatic annual percentage cost of living raise. In contrast, the provision at issue here includes no implicit guarantee, but rather bases any salary increases on the unpredictable actions of a third party. Further, and more importantly, we cannot agree with the majority in *Olson* that a judge acquires at the beginning of his term of office not only a vested right in the current salary provided for the office, but also in the particular statutory salary-increase formula then in effect. We agree instead with the following language from Justice Newman's dissent:

[I]t was the absence from salary statutes of vested rights to compensation for services not yet rendered that necessitated the constitutional prohibition of reductions in elected officers' salaries during their terms of office.... It is neither necessary nor fitting for this court to add to that constitutional protection a judicially contrived right, purportedly contractual, that is not enjoyed by the thousands of other public officers and employees who serve indefinite tenures.

....

... It is one thing to insist, as the Constitution does, that a present salary, once established, may not be reduced during a judge's term of office; it is another to argue that a legislative experiment to find a better mechanism for setting judicial salaries has been transmuted into an irreversible economic grant.

178 Cal.Rptr. at 580, 585, 636 P.2d at 544, 549.

*Godbey,* 131 Ariz. at 13, 638 P.2d at 235, also fails to support Judge Smith's argument. It is true, as Judge Smith points out, that *Godbey* stated: "A public employee has a right to rely on the statutory or contractual provisions governing benefits as they existed at the time he entered into the contract of employment." *Id.* at 21,

638 P.2d at 243. Contrary to the implicit thrust of Judge Smith's analysis, however, *Godbey* does not hold that public employees acquire vested rights in all statutory provisions in effect at the beginning of their terms of office that may potentially affect their employment in the future. The full quotation from *Godbey* is as follows:

Public employees' benefits are not gratuities but are vested rights in the nature of deferred compensation. *The right to receive such benefits vests when, in accordance with the contract of employment, the employee fulfills certain conditions precedent—e.g., continued employment for a certain period of time. Once vested,* those rights cannot be retroactively impaired by the public employer. [Citations omitted.] Leave benefits are conceptually no different from pension benefits, and the same prohibition on retroactive impairment applies when there is a written agreement pertaining to employment. [Citations omitted.] A public employee has a right to rely on the statutory or contractual provisions governing benefits as they existed at the time he entered into the contract of employment.

*Id.* at 21, 638 P.2d at 243 (emphasis added). Here, the condition precedent to the vesting of Judge Smith's right to receive increased salary payments calculated under the preamendment version of Phoenix City Code art. III, § 2–83.1—a legislative increase in superior court judges' salaries—never occurred while that version remained in effect. Judge Smith had no vested contractual right to continued salary increases under preamendment section 2–83.1.

Judge Smith's alternative contention that the amendments to section 2–83.1 reduced his compensation during his term of office in violation of Ariz. Const. art. VI, § 33 and art. IV, pt. 2, § 17 is similarly flawed. Because Judge Smith had no vested contractual right in the preamendment section 2–83.1 salary calculation method, the prospective alteration of that method did not "reduce" his compensation. *Cf. Will,* 449 U.S. at 200, 101 S.Ct. at 473 (Congressional nullification of automatic salary increases for federal judges before they became effective did not violate prohi-

bition of U.S. Const. art. III, § 1, against diminishing federal judges' compensation during their continuation in office).

Because of our resolution of the issues raised in this case, we need not address whether any recovery of contract damages would comprehend the period beginning December 8, 1983; whether A.R.S. §§ 12–541(3) or 12–821 would limit Judge Smith's damages to those accrued within the year preceding the filing of this action; or whether Judge Smith's action should have been held barred by estoppel or laches.

■ We grant the city's request for attorney's fees pursuant to A.R.S. § 12–341.-01(A), in connection with the fees incurred in making arguments relating to the contract claim, not the constitutional claims. *See Shirley v. Hartford Acc. & Indem. Co.,* 125 Ariz. 70, 607 P.2d 389 (App.1979). The city may establish the amount of its award by complying with Ariz.R.Civ.App.P. 21(c) and *Lacer v. Navajo County,* 141 Ariz. 392, 687 P.2d 400 (App.1984).

Affirmed.

FIDEL, P.J., and McGREGOR, J., concur.