SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| KENNETH J. PROKSA AND DENNIS P. RUSSELL,<br><br>Plaintiffs,<br><br>v.<br><br>ARIZONA STATE SCHOOLS FOR THE DEAF AND THE BLIND, a state created school and public corporation; STATE OF ARIZONA, a body politic and state government; MARCIA SMITH, JOANNE TRIPI, JANE N. ERIN, GAIL HARRIS, JAMES A. WHITEHILL, and THOMAS J. POSEDLY, each officially as a member of the Board of Directors of ASDB and individually; and KENNETH D. RANDALL, officially as the Superintendent of ASDB and individually; JOHN DOES 1-10; JANE DOES 1-10; ABC PROPRIETOR-SHIPS and PARTNERSHIPS 1-10; and XYZ LIMITED LIABILITY COMPANIES and CORPORATIONS 1-10,<br><br>Defendants. | Arizona Supreme Court<br>No. CV-02-0388-CQ<br><br>United States District Court<br>No. CIV 02-412-TUC-WDB<br><br>**O P I N I O N** |

Certified Questions from the
United States District Court for the District of Arizona
The Honorable William D. Browning, Judge

**QUESTIONS ANSWERED**

LAWRENCE E. CONDIT                                                          Tucson
Attorney for Plaintiffs

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                      Phoenix
    By  Michael K. Goodwin, Assistant Attorney General,
    Employment Law Section
Attorneys for Defendants

**H U R W I T Z,** Justice

¶1 Kenneth Proksa and Dennis Russell were long-time employees of the Arizona State Schools for the Deaf and Blind (the "Schools"). After their employment was terminated in 2002, Proksa and Russell filed suit in superior court against the Schools, the State of Arizona, and others, alleging that they had been wrongfully terminated. Defendants removed the suit to federal court.

¶2 On November 18, 2002, United States District Judge William D. Browning certified two questions of Arizona law to this court. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 12-1861 to -1867 (2002) (Uniform Certification of Questions of Law Act). We accepted jurisdiction to answer the certified questions on January 7, 2003, *see* Ariz. R. Sup. Ct. 27(b), and today address those questions.

## I.

¶3 The facts relevant to the disposition of the certified questions are set forth in the district court's certification order and may be quickly summarized. Kenneth Proksa was hired by the Schools in 1981, and Dennis Russell in 1987. Prior to 1993, A.R.S. § 15-1326(B) (1986) provided that, after successfully completing a term of probation, all employees of the Schools "shall be granted permanent employment status." The

2

statute also provided that a permanent employee could only be discharged "for cause" and that "[p]ermanent employees discharged from employment at the Schools are entitled to due process protections in the manner provided by the board." A.R.S. § 15-1326(C) (1986). *See Deuel v. Ariz. State Sch. for the Deaf and Blind,* 165 Ariz. 524, 526-27, 799 P.2d 865, 867-68 (App. 1990) (holding that terminated permanent employee is entitled to various due process protections at post-termination hearing).

¶4    In 1993, in response to a series of recommendations from the auditor general and the staff of the joint legislative budget committee, the legislature adopted a sweeping amendment of the statutes governing the Schools. 1993 Ariz. Sess. Laws, ch. 204. The amended statutes required the Schools to designate certain positions as "management and supervisory." A.R.S. § 15-1325(A) (2002). The superintendent of the Schools was then required to issue "one, two or three year contracts" for these positions. The Schools would then decide, upon the expiration of each contract, whether to issue the employee a new contract. A.R.S. § 15-1325(D). "Management and supervisory" employees were exempted under the new statute from the requirement in § 15-1326(B) that all employees completing probation be granted "permanent" status. A.R.S. § 15-1326(B).

3

¶5     Proksa and Russell were classified as "management" personnel in 1993, and, under the new statute, were offered one-year employment contracts. *See* 1993 Ariz. Sess. Laws, ch. 204, § 17(2) (governing initial offer of employment contract to person in supervisory or management position). These contracts were renewed annually pursuant to A.R.S. § 15-1325(D) until 2002. In April 2002, the Schools notified Proksa and Russell that their contracts would not be renewed. *See* A.R.S. § 15-1325(E) (governing notices of non-renewal).

¶6     Proksa and Russell then filed suit in superior court, raising claims of wrongful termination, age discrimination, and intentional infliction of emotional distress. They also brought claims under 42 U.S.C. § 1983 (2002), alleging unlawful deprivation of their property interest in employment. Citing federal question jurisdiction, the defendants then removed the case to federal court.

¶7     Proksa and Russell filed a motion to remand the case to state court. Judge Browning denied that motion and instead certified the following two questions of law to this court:

> 1. May the Arizona Legislature statutorily change the terms of a "permanent" employee's employment without providing for offer, acceptance or assent, and consideration?
>
> 2. Did Plaintiffs' acceptance of the yearly contracts between 1993 and 2001 effect an assent to the modification of the terms of their employment that required no additional consideration?

4

¶8    We have jurisdiction over these certified questions pursuant to Article 6, Section 5(6) of the Arizona Constitution, A.R.S. §§ 12-1861 to -1867, and Supreme Court Rule 27. For the reasons below, we answer the first certified question in the affirmative and thus find it unnecessary to reach the second question.

## II.

¶9    The first certified question sounds in contract. Plaintiffs begin from the premise that, under Arizona law, the "employment relationship is contractual in nature," A.R.S. § 23-1501(1) (Supp. 2002), and that an employer may not unilaterally modify an employment contract without an offer, assent or acceptance, and consideration. *See Demasse v. ITT Corp.*, 194 Ariz. 500, 506 ¶ 18, 984 P.2d 1138, 1144 (1999). Plaintiffs contend that after successfully completing their periods of probation, they each effectively entered into employment contracts with the Schools providing that they could not be discharged without cause, and that the 1993 amendments to A.R.S. §§ 15-1325 and -1326 could therefore not be applied to them without their assent or acceptance and consideration.

¶10    We do not quarrel with the premise that the employment relationship is contractual, and that employment contracts, like others, may not be unilaterally modified. But the critical

issue in this case is not whether there was a contract of employment, but rather whether one provision of that contract was that Proksa and Russell were permanent employees. Proksa and Russell claim that the pre-1993 version of A.R.S. § 15-1326 created such a contract right.

¶11    The general principle, however, is that statutes *do not* create contract rights. *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*, 470 U.S. 451, 465-66 (1985) ("[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'") (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79 (1937)); *US West Communications, Inc. v. Ariz. Corp. Comm'n*, 197 Ariz. 16, 22 ¶ 19, 3 P.3d 936, 942 (App. 1999) ("Courts are reluctant to find that statutes create private contractual rights."). This is because the primary function of a legislature "is not to make contracts, but to make laws that establish the policy of the state." *Nat'l R.R. Passenger Corp.*, 470 U.S. at 466. Policies, unlike contracts, are "inherently subject to revision and repeal." *Id.*

¶12    The presumption that statutes do not create contractual rights serves an important public purpose. "To treat statutes as contracts would enormously curtail the

6

operation of democratic government.  Statutes would be ratchets, creating rights that could never be retracted or even modified without buying off the groups upon which the rights had been conferred." *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995).  If statutes were routinely treated as establishing contractual rights, the legislature might well be discouraged from addressing pressing public needs, for fear that any law could not thereafter be modified without the consent of those for whose benefit it was passed.  *See Nat'l R.R. Passenger Corp.*, 470 U.S. at 466 ("[T]o construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.").

¶13     The well-established presumption that statutes do not create contract rights has repeatedly been applied by courts in other jurisdictions to laws governing public employee tenure. For example, the Seventh Circuit has held that the Illinois legislature can amend a statute providing for tenure for public school principals to instead provide that principals serve at the pleasure of local school boards.  *See Pittman*, 64 F.3d at 1104 (noting that tenure for school principals is "not a term in a contract," but "a term in a statute, and a statute is presumed not to create contractual rights").  Similarly, the Wisconsin Supreme Court has held that its legislature could

7

constitutionally amend a law providing for tenure for public school teachers to require retirement at age sixty-five. *Morrison v. Bd. of Educ.*, 297 N.W. 383, 385 (Wis. 1941) (holding that while an act may fix the term or tenure of a public employee, "[t]he presumption is that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise"). The case law thus rejects the general notion that statutes create a contractual right to tenure in office, and instead adopts the rule that "[t]enure is regulated by legislative policy." *Wash. Fed'n of State Employees v. Washington,* 682 P.2d 869, 872 (Wash. 1984).

¶**14** Our decisions make plain that "[n]o person has a vested right to any public office or position except as provided by law, and if a competent authority abolishes the position for a legitimate reason, the holder thereof has no remedy because he has necessarily lost the position and the salary which goes with it." *Donaldson v. Sisk*, 57 Ariz. 318, 327-28, 113 P.2d 860, 864 (1941). The legislature has the unquestioned right to create and abolish offices in the public interest, and that right "necessarily includes the power to fix or alter the term, the mode of appointment and compensation." *Ahearn v. Bailey*, 104 Ariz. 250, 253, 451 P.2d 30, 33 (1969) (citing *Barrows v. Garvey*, 67 Ariz. 202, 193 P.2d 913 (1948)). These statements,

8

while not directly addressing the question certified to us today, are inconsistent with the plaintiffs' assertion that statutes governing public employment generally create enforceable contract rights.

¶15     The legislature, of course, does have the power to pass laws that establish contractual rights.  But the case law makes clear that statutes will not be interpreted as contracts without an "adequate expression of an actual intent of the State to bind itself."  *See Nat'l R.R. Passenger Corp.*, 470 U.S. at 466-67 (quoting *Wis. & Mich. Ry. Co. v. Powers*, 191 U.S. 379, 386-87 (1903)).  Plaintiffs have cited no evidence that the legislature intended to enter into a contract by enacting the pre-1993 version of A.R.S. § 15-1326, and we find nothing in the prior version of the statute that expresses such intent.  *See US West*, 197 Ariz. at 22 ¶¶ 19-22, 3 P.3d at 942 (finding that laws governing telephone service do not evidence intent to enter into regulatory contract with provider).

## III.

¶16     In arguing that the prior version of A.R.S. § 15-1326 established a contract between the State and those classified as "permanent" employees of the Schools, Proksa and Russell rely heavily on *Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965), and various of its progeny, including *Norton v. Arizona Department of Public Safety Local Retirement Board,* 150 Ariz.

9

303, 723 P.2d 652 (1986), and *Thurston v. Judges' Retirement Plan*, 179 Ariz. 49, 876 P.2d 545 (1994). These cases adopted what we have characterized as "the contract theory of retirement benefits." *Norton*, 150 Ariz. at 306, 723 P.2d at 655. Under that theory, the State's promise to pay retirement benefits is part of its contract with the employee; by accepting the job and continuing work, the employee has accepted the State's offer of retirement benefits, and the State may not impair or abrogate that contract without offering consideration and obtaining the consent of the employee. *See Yeazell*, 98 Ariz. at 113-117, 402 P.2d at 544-547.

¶17 Proksa and Russell rely on the broad language of *Yeazell* to support their argument that, by accepting employment with the Schools and continuing to work past the probationary period, they entered into a contract with the State that they would be treated as permanent employees and discharged only for cause. When read in isolation, *Yeazell* offers some support to that argument. *See id.* at 113, 402 P.2d at 544 ("[T]he laws of the state are a part of every contract . . . ."). *Yeazell*, however, deals only with *retirement* benefits, and, for the reasons below, we decline to extend its "contract" theory to the statutes governing the tenure of school management and supervisory personnel.

10

¶18     The issue in *Yeazell* was whether statutorily established pension benefits could be modified by the legislature.  The majority rule at the time was that such benefits could be modified because the employee had no vested right in the pensions.  This conclusion was based on the prevalent characterization of pension benefits as mere "gratuities," granted at the benevolent will of the sovereign. *Id.* at 112, 402 P.2d at 543.  *See Kraus v. Bd. of Trustees of the Police Pension Fund*, 390 N.E.2d 1281, 1284 (Ill. App. Ct. 1979) (reviewing cases establishing this "archaic" approach to pension plans).  As such, pension plans — like any statutory entitlement — could be amended, changed, or repealed as the legislature saw fit.

¶19     Treating retirement benefits as "gratuities," however, posed a particular problem in Arizona.  As *Yeazell* recognized, under the "Gift Clause" of the Arizona Constitution (art. 9, § 7), "[t]he state may not give away public property or funds; it must receive a *quid pro quo*." *Yeazell,* 98 Ariz. at 112, 402 P.2d at 543.  Thus, this court noted, "the various retirement acts for public employees in Arizona cannot be upheld unless the state . . . enters into a legal obligation founded upon a valuable consideration." *Id*.

¶20     To validate the Arizona retirement acts, *Yeazell* concluded, as had the Supreme Court of California in construing

11

its Gift Clause, that pensions were *not* gratuities, but were in the nature of contracts, viewed as deferred compensation for services rendered. *Yeazell*, 98 Ariz. at 113, 402 P.2d at 543-44 (citing *O'Dea v. Cook*, 169 P. 366 (Cal. 1917)); *accord Bakenhus v. City of Seattle*, 296 P.2d 536 (Wash. 1956) (reaching identical conclusion with respect to Washington retirement statutes). Subsequent Arizona cases, including *Norton* and *Thurston*, then applied this "contract theory" to particular issues involving retirement benefits.

¶21 In short, *Yeazell* and its progeny concluded that retirement benefits were intended as a contract between public employees and the State largely because any other conclusion would have resulted in the unconstitutionality of the entire retirement system. *See Yeazell*, 98 Ariz. at 112, 402 P.2d at 543 ("It is plain that in this state pensions cannot be sustained as constitutional unless anchored to a firmer basis than that of a gift."); *see also State v. Soto-Fong*, 187 Ariz. 186, 202, 928 P.2d 610, 626 (1996) (statutes should be interpreted whenever possible in a fashion so as to preserve their constitutionality). Thus, *Yeazell* and the public employee pension benefit cases do not establish that *all* statutes involving public employee benefits and tenure are contractual in nature; rather, those cases represent an exception to the general rule that statutes are not intended to create

12

contractual terms.  Put differently, in the retirement benefits area, given the Gift Clause of our constitution, this court effectively found an "adequate expression of an actual intent of the State to bind itself," *Nat'l R.R. Passenger Corp.*, 470 U.S. at 466-67, because any finding to the contrary would render the statutes unconstitutional.

¶**22**    It is a far different matter, however, to conclude that all statutes dealing with public employees constitute a legislative contract with the employees.  Other states that have adopted the "contract theory" of retirement benefits have rejected the assertion that all other statutes dealing with public employees necessarily create similar contractual obligations.  *See, e.g., Wash. Fed'n of State Employees*, 682 P.2d at 872 (tenure is a term of employment regulated by legislative policy and therefore is not based in contract, unlike deferred benefits such as pensions); *Tirapelle v. Davis*, 26 Cal. Rptr. 2d 666 (Ct. App. 1993) (salary levels of state employees are not contractual or otherwise vested).  We agree, and hold today that *Yeazell* and its progeny do not adopt a general rule that statutes relating to public employees confer contractual rights on those employees.  As the Supreme Court of Wisconsin concluded in a similar context, "[w]e see no reason . . . why a separate and subsequent tenure act that presents no internal evidences of being contractual in character should be

held to acquire such a character by reason of such contractual elements as may be found in a previously enacted retirement act." *Morrison*, 297 N.W. at 387.

## IV.

¶23     Proksa and Russell also argue at length that the pre-1993 version of A.R.S. § 15-1326 gave them a property interest in continued employment of which they could not constitutionally be deprived without due process of law.  Because we exercise jurisdiction today only to address the *state law* questions certified by the district court, this is not an occasion to explore the federal constitutional doctrine of *Board of Regents v. Roth*, 408 U.S. 564 (1972), and its progeny.  In any event, our discussion above resolves whether Proksa and Russell have an existing property interest under Arizona law in continued employment.

¶24     Whether a property interest exists is a matter of state law.  *See Roth*, 408 U.S. at 577; *Brady v. Gebbie*, 859 F.2d 1543, 1548 (9th Cir. 1988) (state law defines property interests).  It is of course true that, until 1993, Arizona statutes created a property interest in continued employment for permanent employees of the Schools that was protected by the Due Process Clause, and thus could be terminated only after a hearing establishing appropriate cause.  *See Deuel,* 165 Ariz. at 526, 799 P.2d at 867.  But it is also plainly true that *current*

14

law affords plaintiffs no such property interest. To the extent that the certified question from the district court asks us whether Proksa and Russell currently have a property interest in continued employment by the State, we answer that question in the negative.

¶25 Insofar as the district court's first certified question asks us whether the legislature had the power under state law to change the status of plaintiffs' tenure, the answer is plainly that it could legally do so. Under Arizona law, the legislature has the plenary authority to change a state employee's job classification. *See Ahearn,* 104 Ariz. at 253, 451 P.2d at 33 (legislature has the right to create or abolish public positions, which right "necessarily includes the power to fix or alter the term, the mode of appointment and compensation"); *see also Gattis v. Gravett*, 806 F.2d 779, 781 (8th Cir. 1986) ("[T]he legislature which creates a property interest may rescind it . . . whether the interest is an entitlement to economic benefits, a statutory cause of action or civil service job protections."); *accord Rea v. Matteucci*, 121 F.3d 483 (9th Cir. 1997); *McMurtray v. Holladay*, 11 F.3d 499 (5th Cir. 1993); *Packett v. Stenberg*, 969 F.2d 721 (8th Cir. 1992); *Goldsmith v. Mayor & City Council of Baltimore*, 845 F.2d 61 (4th Cir. 1988); *Conn. Judicial Selection Comm'n v. Larson*, 745 F. Supp. 88 (D. Conn. 1989).

15

**V.**

¶26    For the reasons above, we answer the first certified question from the district court in the affirmative.  Given our answer to the first certified question, it is not necessary to address the second certified question.


_____
Andrew D. Hurwitz, Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice