IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

THE HONORABLE KENNETH FIELDS (RET.), A RETIRED STATE COURT JUDGE;
AND THE HONORABLE JEFFERSON LANKFORD (RET.), A RETIRED STATE COURT
JUDGE, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,
*Plaintiffs/Appellees,*

*v.*

THE ELECTED OFFICIALS' RETIREMENT PLAN; BRIAN TOBIN;
RICHARD PETRENKA; GREGORY FERGUSON; LAUREN KINGRY;
JEFF MCHENRY; AND RANDIE STEIN, ARE ALL NAMED IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE BOARD OF TRUSTEES OF THE ELECTED
OFFICIALS RETIREMENT PLAN OF THE STATE OF ARIZONA;
AND THE STATE OF ARIZONA,
*Defendants/Appellants.*

No. CV-13-0005-T-AP
Filed February 20, 2014

Appeal from the Superior Court in Maricopa County
The Honorable Robert H. Oberbillig, Judge
No. CV2011-017443
**AFFIRMED**

COUNSEL:

Colin F. Campbell, Sharad H. Desai, Thomas L. Hudson (argued), Osborn
Maledon PA, Phoenix, for Kenneth Fields and Jefferson Lankford

Bennett Evan Cooper, Shannon E. Trebbe, Steptoe & Johnson, LLP,
Phoenix, for Elected Officials Retirement Plan, Brian Tobin, Richard
Petrenka, Gregory Ferguson, Lauren Kingry, Jeff McHenry, and Randie
Stein

Thomas C. Horne, Arizona Attorney General, Charles A. Grube, Assistant Attorney General (argued), Arizona Attorney General's Office, Phoenix, for State of Arizona

Gregrey G. Jernigan, Office of the President, Arizona State Senate, Phoenix, for Amicus Curiae Andy Biggs

Peter A. Gentala, Pele K. Peacock, Office of the Speaker, Arizona House of Representatives, Phoenix, for Amicus Curiae Andrew M. Tobin

William F. Bock, General Counsel, League of Arizona Cities and Towns, Phoenix, for Amicus Curiae League of Arizona Cities and Towns

Joseph Sciarrotta, Jr., General Counsel, Office of Governor Janice K. Brewer, Phoenix, for Amicus Curiae Governor Janice K. Brewer

Robert D. Klausner, Adam P. Levinson, Klausner, Kaufman, Jensen & Levinson, Plantation, FL, and Ron L. Kilgard, Keller Rohrback PLC, Phoenix, for Amicus Curiae National Conference on Public Employee Retirement Systems

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BERCH, VICE CHIEF JUSTICE BALES, JUSTICE PELANDER, and JUSTICE TIMMER joined.

JUSTICE BRUTINEL, opinion of the Court:

¶1 Arizona Revised Statutes Section 38-818 establishes a formula for calculating pension benefit increases for retired members of the Elected Officials' Retirement Plan ("Plan"). In 2011, the legislature modified that formula by enacting Senate Bill ("S.B.") 1609. Because that statute diminishes and impairs the retired members' benefits, we hold that it violates the Pension Clause of Article 29, § 1(C) of the Arizona Constitution.

**I.**

¶2           In 1985, the Arizona Legislature established the Elected Officials' Retirement Plan to provide pension benefits for elected officials, including judges.  A.R.S. §§ 38-801(15), 38-802, 38-804.  The Plan is funded by employer and employee contributions, court fees, and investment proceeds.  *Id.* § 38-810.

¶3           Upon retirement, Plan members receive monthly benefits based on 4% of their salary for each year worked, up to a maximum of 80% of their average yearly salary.[1]  *Id.* § 38-808(B)(1).  Plan members are also eligible for additional financial benefits such as medical subsidies, *id.* § 38-817, disability benefits, *id.* § 38-806, survivor benefits, *id.* § 38-807, and benefit increases after retirement, *id.* § 38-818.

¶4           The benefit increase formula in § 38-818 is similar to a cost-of-living adjustment.  But unlike a cost-of-living adjustment, which is generally tied to the inflation rate, *see Strunk v. Pub. Emps. Ret. Bd.*, 108 P.3d 1058, 1070 (Or. 2005), the benefit increase in § 38-818 is not tied to inflation, but instead is tied to the Plan's return on investment.  A benefit increase is determined by multiplying the amount by which the yearly total investment return exceeds 9% times the actuarial present value of pensions in payment status, subject to a statutory cap of 4%.  A.R.S. § 38-818(B)–(C), (F).  Any return in excess of the amount necessary to pay for the benefit increase in any given year is placed in a reserve fund to be used for future benefit increases, including years in which the return itself is not sufficient to provide an increase.  *Id.* § 38-818(E).

¶5           When the Plan was created, no statutory mechanism for awarding post-retirement benefit increases existed; instead, the legislature passed ad hoc increases.  *See* A.R.S. § 38, Ch. 5, Art. 3, Elected Officials' Retirement Plan (Historical and Statutory Notes).  In 1990, the legislature enacted A.R.S. § 38-818, creating the first statutory mechanism for

---

[1]      In 2011, the legislature modified this formula for those who become Plan members after January 1, 2012.  Those members receive monthly benefits based on 3% of their salary per year up to a maximum of 75% of their average yearly salary.  A.R.S. § 38-808(C)(1).

calculating increases. This statute provided that retired members are "entitled to receive a permanent increase in the base benefit" each year as determined by the statutory formula, but was effective only through 1994. *Id.* § 38-818(A) (1990). There was no benefit increase mechanism for 1995.

**¶6** In 1996, the legislature removed the 1994 sunset provision, extending the permanent benefit increases indefinitely. *Id.* § 38-818 (1996). The legislature also reduced the annual benefit increase to the lesser of one-half of the percentage change in the consumer price index or 3%. *Id.* § 38-818(F). In 1998, the legislature amended § 38-818 to reinstate the 4% benefit increase cap. *Id.* § 38-818(F) (1998).

**¶7** Later that year, Proposition 100 was referred to and passed by the voters, becoming Article 29 of the Arizona Constitution. It provides:

> A. Public retirement systems shall be funded with contributions and investment earnings using actuarial methods and assumptions that are consistent with generally accepted actuarial standards.
> B. The assets of public retirement systems, including investment earnings and contributions, are separate and independent trust funds and shall be invested, administered and distributed as determined by law solely in the interests of the members and beneficiaries of the public retirement systems.
> C. Membership in a public retirement system is a contractual relationship that is subject to article II, § 25, and public retirement system benefits shall not be diminished or impaired.

Ariz. Const. art. 29, § 1.

**¶8** Beginning in 2000, the ratio of the Plan's assets to its liabilities ("funding ratio"), began to steadily decline.[2] Staff of PSPRS,

---

[2] The funding ratio measures a pension plan's assets as a percentage of its future obligations. *See generally* Richard A. Ippolito, *Reversion Taxes,*

*Comprehensive Annual Financial Report/Elected Officials' Retirement Plan FY 2010* at 7, *available at* http://azmemory.azlibrary.gov/cdm/singleitem/collection/statepubs/id/12803/rec/1. Between 2000 and 2010, the Plan's funding ratio decreased from 141.7% to 66.7%. *Id.* Nevertheless, the reserve fund allowed retired members to receive a 4% benefit increase each year until 2011.

¶9 In 2011, the legislature enacted S.B. 1609, the provision at issue here. S.B. 1609 amended § 38-818 by prohibiting the transfer of any investment earnings that exceed the 9% rate of return to the reserve fund, and instead provided that such earnings would fund the basic retirement plan.[3] 2011 Ariz. Sess. Laws ch. 357, § 62(A), (D). As a result, retired Plan members received only a 2.47% benefit increase in July 2011 (rather than the anticipated 4% increase) and did not receive any benefit increases in 2012 or 2013.

¶10 Effective July 1, 2013, S.B. 1609 also changed the formula used to calculate permanent benefit increases. A.R.S. § 38-818.01(B). This new formula increased the rate of return necessary to trigger a benefit increase from 9% to 10.5%. *Id.* § 38-818.01(D). The new formula also tied the availability of benefit increases to the Plan's overall funding ratio. *Id.* § 38-818.01(C). If the funding ratio is 60% or less, the Plan will not fund a benefit increase; if the funding ratio is between 60% and 65%, the Plan will fund a 2% benefit increase; and for each 5% increase in the funding ratio over 65%, the Plan will increase the amount of the benefit increase by 0.5% up to a maximum of 4%. *Id.* Beginning December 31, 2015, S.B. 1609 allows the legislature to provide ad hoc benefit increases in addition to the permanent benefit increases that may be awarded each year. *Id.* § 38-818.02.

¶11 In September 2011, retired judges Fields and Lankford, on

---

*Contingent Benefits, and the Decline in Pension Funding*, 44 J. Law & Econ. 199, 202 (2001).

[3] Although S.B. 1609 became effective on July 20, 2011, the legislature made it retroactive to May 31, 2011, in order to reverse the July 1, 2011 transfer of excess investment earnings to the reserve fund.

behalf of themselves and as representatives of a class of retired Plan members and beneficiaries (collectively "Fields"), sued the Elected Officials' Retirement Plan and its board members ("EORP"), alleging that S.B. 1609 violates Article 29, § 1, as well as Article 2, § 25 of the Arizona Constitution, and Article 1, § 10 of the United States Constitution, both of which prohibit the enactment of laws impairing contract obligations. The State intervened to defend S.B. 1609. Fields moved to preliminarily enjoin implementation of S.B. 1609, and the trial court consolidated the hearing on the preliminary injunction with a trial on the merits. Following the trial, the court found that S.B. 1609 violates Article 29, § 1(C)'s command that "public retirement system benefits shall not be diminished or impaired." The court reasoned that § 38-818's required benefit increase was a vested financial benefit that was directly and adversely affected by S.B. 1609. The court did not address Fields' contentions that S.B. 1609 violated the Contract Clauses of the state and federal constitutions. The court also awarded Fields attorneys' fees.

¶12 After EORP filed a timely notice of appeal, we granted EORP's petition to transfer the case to this Court under Arizona Rule of Civil Appellate Procedure 19(a). The funding of public pensions raises issues of statewide importance, and we have jurisdiction pursuant to Article 6, § 5(3) of the Arizona Constitution.

## II.

¶13 Before we begin our analysis of the legal question presented, we note that the Justices of this Court are not members of the class of retired judges who are appellees in this case. We are, however, members of the Plan, as are most Arizona state judges, and we will be eligible for benefit increases pursuant to A.R.S. § 38-818 upon our retirement.[4] No

---

[4] New enrollment in the Plan ended after 2013. Beginning January 1, 2014, all new Arizona elected officials, including judges, are members of the newly created Elected Official's Defined Contribution Retirement System plan. A.R.S. § 38-831(4). They are not eligible for benefit increases pursuant to A.R.S. § 38-818. Elected officials and judges who were members of the Plan on December 31, 2013, are eligible to remain in the Plan. A.R.S. § 38-804(B).

party has asked for our recusal, and, in any event, the rule of necessity applies.

¶**14** The rule of necessity establishes that a judge is not disqualified because of a personal interest if no other judge is available to decide the case. *United States v. Will*, 449 U.S. 200, 213–16 (1980); *see also Scheehle v. Justices of the Sup. Ct.*, 211 Ariz. 282, 295, 120 P.3d 1092, 1105 (2005). Because our disqualification would "result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated," *Will*, 449 U.S. at 214 (quotation omitted), the rule of necessity applies, and we must decide the matter, *Wisconsin Judicial Com'n v. Prosser*, 817 N.W.2d 830, 833 (Wis. 2012).

## III.

¶**15** We review the constitutionality of S.B. 1609 de novo. *State v. Glassel*, 211 Ariz. 33, 51 ¶ 65, 116 P.3d 1193, 1211 (2005). We presume that the statute is constitutional, and a "party asserting its unconstitutionality bears the burden of overcoming the presumption." *Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977).

## IV.

### A.

¶**16** We first address the argument that because Article 29, § 1(C) references the Contract Clause of Article 2, § 25 of the Arizona Constitution, we should resolve this case by using a Contract Clause analysis similar to that employed by the Supreme Court in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983), which held that although the federal Contract Clause is facially absolute, it allows the impairment of contracts under certain conditions. Section 1(C) not only references the Contract Clause, but also uses similar language. *Compare* Ariz. Const. art. 29, § 1(C) ("Membership in a public retirement system is a contractual relationship that is subject to article II, § 25, and public retirement system benefits shall not be diminished or impaired."), *with* Ariz. Const. art. 2, § 25 ("No . . . law impairing the obligation of a contract, shall ever be enacted."). But accepting this argument would render

superfluous the latter portion of § 1(C), the Pension Clause, which prohibits diminishing or impairing public retirement benefits. Because the legislature generally avoids redundancy, we reject this argument. *Williams v. Thude*, 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997) (noting court construes statutes to avoid rendering portions superfluous); *Vega v. Morris*, 184 Ariz. 461, 463, 910 P.2d 6, 8 (1996) (rejecting an interpretation that would render the statute in question "essentially meaningless").

¶17 We similarly reject EORP's argument that reading the two clauses of § 1(C) independently renders the reference to the Contract Clause redundant. The Contract Clause applies to the general contract provisions of a public retirement plan, while the Pension Clause applies only to public retirement benefits. Therefore, the Pension Clause confers additional, independent protection for public retirement benefits separate and distinct from the protection afforded by the Contract Clause. *See* Ariz. Op. Att'y Gen. No. I09-009 (concluding that the Pension Clause "provides additional, substantive protection" to that offered by the Contract Clause).

**B.**

¶18 We next consider whether use of the formula established by A.R.S. § 38-818 to calculate future benefit increases is itself a "benefit" protected by the Pension Clause. Fields argues that the term "benefit" includes the benefit-increase formula. The State and EORP, on the other hand, argue that the term "benefit" only includes the right to receive payments in the amount determined by the most recent calculation. All parties agree that once a benefit increase has occurred, the Pension Clause protects it from later reduction.

¶19 In interpreting a constitutional amendment, our primary purpose is to "effectuate the intent . . . of the electorate that adopted it." *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994); *see also McElhaney Cattle Co. v. Smith,* 132 Ariz. 286, 289, 645 P.2d 801, 804 (1982). Neither the Arizona Constitution nor Arizona case law defines "benefit." We therefore consider how this term "is generally understood and used by the people." *McElhaney Cattle Co.*, 132 Ariz. at 290, 645 P.2d at 805; *see also State v. Jones*, 188 Ariz. 388, 392, 937 P.2d 310, 314 (1997) (when a term

is not defined within a statute, "the court first looks to the statute's language"). We first examine the provision by assigning each word its "natural, obvious, and ordinary meaning." *State ex rel. Morrison v. Nabours*, 79 Ariz. 240, 245, 286 P.2d 752, 755 (1955).

**¶20** To determine the ordinary meaning of a term, we commonly refer to established and widely used dictionaries. *State v. Wise*, 137 Ariz. 468, 470 n.3, 671 P.2d 909, 911 n.3 (1983). In the retirement-system context, a "benefit" has been defined as "a payment or service provided for under an annuity, pension plan, or insurance policy." *Merriam-Webster's Collegiate Dictionary* 114 (11th ed. 2003); *see also The American Heritage Dictionary* 168 (5th ed. 2011) (defining "benefit" as "a form of compensation, such as . . . a pension, provided to employees in addition to wages or salary as part of an employment arrangement").

**¶21** We think the dictionary definitions do not determine the meaning of "benefit" as used in the Pension Clause. The parties' differing interpretations each are reasonable, and the dictionary definitions do not provide sufficient guidance as to whether a "benefit" constitutes only the base benefit or includes the promise of future benefit increase payments using a specified formula.

**¶22** When terms are unclear or susceptible to more than one reasonable interpretation, we consider extrinsic evidence of the electorate's intent, including "the history behind the provision, the purpose sought to be accomplished by its enactment, and the evil sought to be remedied." *McElhaney Cattle Co.*, 132 Ariz. at 290, 645 P.2d at 805.

**¶23** The history of the Pension Clause suggests that the term "benefit" includes benefit increases. In 1990, eight years before the voters approved the Pension Clause, the legislature enacted A.R.S. § 38-818, which provides that eligible retired members are "*entitled* to receive [a] permanent benefit increase in their base benefit." (Emphasis added). After this version of § 38-818 sunsetted in 1994, the legislature removed the sunset provision in 1996 — unqualifiedly extending benefit increases in perpetuity. A.R.S. § 38-818 (1996). Just two years later, the legislature reinstated the 4% benefit increase cap, and the voters approved Article 29, of which the Pension Clause is a part, giving public retirement benefits

constitutional protection.

¶24    The Pension Clause neither altered the concept of "benefit" reflected in § 38-818's "entitled to receive a permanent benefit increase" language, nor amended the formula for the calculation of pensions. Inasmuch as formula-based future benefit increases were part of the statutorily identified benefits existing in 1998, it seems reasonable to conclude that they also were embraced by the term "benefits" in the Pension Clause.

¶25    We disagree with the State's and EORP's argument that because § 38-818 prescribes only a formula for benefit increases rather than a liquidated amount, that formula is not protected by the Pension Clause. The monthly payments to which a retired Plan member is entitled are determined by a statutory formula. *See* A.R.S. § 38-808(B), (C) (2011); A.R.S. § 38-818(A) (1996). Although the State seeks to limit the definition of "benefit" to the "liquidated amount" of payments as currently calculated, the legislature has never promised to pay a specific dollar amount; rather, it has provided a formula by which the promised amount is calculated. *See id.*

¶26    Adopting this reasoning would place § 38-808's base benefit — the main component of retirement benefits — outside the scope of Pension Clause protection because the base benefit is a direct product of § 38-808's formula. As the legislature demonstrated when it passed S.B. 1609, changing the amount of the promised benefit requires changing the formula. Therefore, the "benefit" provided under § 38-808, and protected by the Pension Clause, necessarily includes the right to use the statutory formula.

¶27    Our interpretation of the Pension Clause is consistent with prior cases. In *Yeazell v. Copins*, this Court held that an employee was entitled to have his retirement benefits calculated based upon the formula existing when he began employment, rather than a less-favorable formula subsequently adopted during his employment. 98 Ariz. 109, 115, 402 P.2d 541, 545 (1965). The Court explained that the employee "had the right to rely on the terms of the legislative enactment of the Police Pension Act of 1937 as it existed at the time he entered the service of the City of Tucson

and that the subsequent legislation may not be arbitrarily applied retroactively to impair the contract." *Id.* at 117, 402 P.2d at 549. As in *Yeazell*, Fields has a right in the existing formula by which his benefits are calculated as of the time he began employment and any beneficial modifications made during the course of his employment. *Thurston v. Judges' Ret. Plan*, 179 Ariz. 49, 51, 876 P.2d 545, 574 (1994) (recognizing that "when the amendment [to retirement benefits] is beneficial to the employee or survivors, it automatically becomes part of the contract by reason of the presumption of acceptance").

¶28 This definition of "benefit" also comports with the use of the term in other states that have similar constitutional provisions protecting public pension benefits. For example, construing a similar definition of "benefit," New York and Illinois have also determined that benefit calculation formulas are entitled to constitutional protection.[5] *See Kleinfeldt v. New York City Emps.' Ret. Sys.*, 324 N.E.2d 865, 868–69 (N.Y. 1975) (including the formula utilized in calculating an annual retirement allowance under the Pension Clause); *Miller v. Ret. Bd. of Policemen's Annuity*, 771 N.E.2d 431, 444 (Ill. App. 2001) (holding benefit increases to be constitutionally protected). Additionally, unlike narrower protections found in other states' constitutions, the protection afforded by the Arizona Pension Clause extends broadly and unqualifiedly to "public retirement system benefits," not merely benefits that have "accrued" or been "earned" or "paid." *See, e.g.*, Alaska Const. art. 7, § 7; Haw. Const. art. 16, § 2; Mich. Const. art. 9, § 24.

¶29 Accordingly, we conclude that § 38-818's benefit increase formula is a "benefit" for purposes of Article 29, § 1(C).

---

[5] New York's Pension Clause provides: "[M]embership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." N.Y. Const. art. 5, § 7. Illinois' Pension Clause provides: "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. art. 13, § 5.

**C.**

**¶30**        The State and EORP argue that retired judges do not have a vested right in the formula because it is contingent upon future events — for example, a rate of return sufficient to trigger the benefit increase. "[Benefits] are contingent when they are only to come into existence on an event or condition which may not happen or be performed until such other event may prevent their vesting." *Thurston*, 179 Ariz. at 50, 876 P.2d at 548 (quoting *Hall v. A.N.R. Freight System, Inc.*, 149 Ariz. 130, 140, 717 P.2d 434, 444 (1986)).

**¶31**        In *Yeazell*, this Court held that because Article 9, § 7 of the Arizona Constitution forbids the legislature from providing gratuities, the right to receive a pension necessarily arose as a condition of the employee's contract of employment. 98 Ariz. at 114, 402 P.2d at 544. Although the right to receive a pension is subject to conditions precedent, such as completing the term of employment, "the right to a pension becomes vested upon acceptance of employment." *Id.* at 115, 402 P.2d at 545; *see also Fund Manager v. City of Phoenix Police Dept.*, 151 Ariz. 487, 489, 728 P.2d 1237, 1239 (App. 1986) (stating that "a public employee's interest in a retirement benefit or pension is so significant that it should become a right or entitlement at the outset of employment"). After such vesting, "[the pension] contract cannot be unilaterally modified nor can one party to a contract alter its terms without the assent of the other party." *Yeazell*, 98 Ariz. at 115, 402 P.2d at 545. This contractual underpinning of public retirement systems was codified by Article 29, §1(C). Because future increases under § 38-818 fall within the meaning of "benefit" under Article 29, they are part of the contract of employment and are not contingent.

**¶32**        EORP relies on *Smith v. City of Phoenix*, 175 Ariz. 509, 858 P.2d 654 (App. 1992), to argue that Fields had only a contingent right. In *Smith*, a city ordinance set the salaries of city judges at 95% of the salaries of superior court judges. Before a statutory increase in superior court salaries took effect, the city revised its ordinance to preserve the salaries for city judges at the then-existing amount. *Id.* at 514, 858 P.2d at 659. The court of appeals held that Smith had no vested contractual right to continued salary increases under the city ordinance, observing that his "contract of employment" did not express "that the method of calculating

his salary would remain fixed throughout his term," and "[i]ndeed, the fact that both parties knew his salary was established by a city ordinance, which was naturally subject to change by the city council, suggests just the opposite." *Id.*

¶33　　　*Smith* is inapposite. Assuming the case was correctly decided, we note that it reflects the general principle that statutory provisions do not create contractual rights. *See Proksa v. Ariz. State Sch. for the Deaf & the Blind*, 205 Ariz. 627, 629 ¶¶11–12, 74 P.3d 939, 941 (2003). But statutorily established retirement benefits are an exception to this rule. *Id.* at 631 ¶21, 74 P.3d at 943. Under *Yeazell*, the right to a public pension on the terms promised vests upon acceptance of employment, 98 Ariz. at 115, 402 P.2d at 545, and "the State may not impair or abrogate that contract without offering consideration and obtaining consent of the employee," *Proksa*, 205 Ariz. at 630 ¶ 16, 74 P.3d at 942; *cf. Thurston*, 179 Ariz. at 52, 876 P.2d at 575 (recognizing that a detrimental modification to retirement benefits "may not be applied absent the employee's express acceptance of the modification because it interferes with the employee's contractual rights").

## D.

¶34　　　This leaves the question of whether S.B. 1609's changes to § 38-818's formula diminish or impair retirement system benefits. We conclude that S.B. 1609 diminishes retired members' retirement benefits in two ways.

¶35　　　First, because S.B. 1609 retroactively prevented the transfer of approximately $31 million to the reserve, 2011 Ariz. Sess. Laws, Ch. 357, § 62(A), (D), the Plan could fund only a 2.47% benefit increase in 2011, rather than the expected 4% increase. Likewise, because S.B. 1609 prevented any transfer for 2012 or 2013 and the reserve did not have sufficient funds, retired members did not receive a benefit increase in those years. *Compare id.* § 62(A) (eliminating any transfer of excess investment earnings from and after May 31, 2011), *with* A.R.S. § 38-818.01(A) (establishing a new benefit increase formula effective July 1, 2013). If S.B. 1609 had not been enacted, Fields would have received a 4% benefit increase in 2011, 2012 and 2013.

¶36 Second, S.B. 1609 makes it more difficult for retired members to receive future benefits by increasing the rate of return required to fund an increase from 9% to 10.5%. S.B. 1609 also makes it less likely that retired members will receive the maximum 4% increase in benefits by tying increases to the Plan's funding ratio. Because S.B. 1609 diminishes and impairs the benefits to which retired members are entitled, the statute violates Article 29, § 1(C).

E.

¶37 We likewise reject the State's and EORP's argument that Section 1(C)'s pension protection is subject to Section 1(A)'s requirement that the plan be funded "using actuarial methods and assumptions that are consistent with generally accepted actuarial standards." Ariz. Const. art. 29 § 1(A). Section 1(C) explicitly states that "retirement system benefits shall not be diminished or impaired." No language in Section 1(C) indicates that its mandate is qualified by any other provision, including Section 1(A).

V.

¶38 Fields has requested an award of attorneys' fees under the common fund doctrine or A.R.S. § 12-2030, which permits fees to prevailing parties in mandamus actions.

¶39 A mandamus action "seeks to compel a public official to perform a non-discretionary duty imposed by law," and a party that prevails in such an action is entitled to attorneys' fees and other expenses under § 12-2030. *Stagecoach Trails MHC, L.L.C. v. City of Benson*, 231 Ariz. 366, 370 ¶¶ 18–19, 295 P.3d 943, 947 (2013).

¶40 Fields sought to compel EORP to calculate benefit increases according to § 38-818's formula rather than that of S.B. 1609. Although Fields characterized the action as one for mandamus, the complaint alleges that the Board did not use the correct formula to calculate the benefit increases, not that it refused to calculate the benefit at all. Therefore, Fields did not seek mandamus relief. *See Stagecoach Trails*, 231 Ariz. at 370 ¶ 21, 295 P.3d at 947 (holding that an action contending that

an officer "either misapplied or misinterpreted the regulations" did not seek relief in the nature of mandamus). We thus deny Fields' request for attorneys' fees pursuant to § 12-2030.

**¶41** Fields also argues that the common fund doctrine supports an award of attorneys' fees. "Under the common fund doctrine a court may award attorneys' fees to counsel for the prevailing side whose efforts in litigation create or preserve a common fund from which others who have undertaken no risk or cost will nevertheless benefit." *Kerr v. Killian*, 197 Ariz. 213, 217–18 ¶ 19, 3 P.3d 1133, 1137–38 (App. 2000). Because "application of [the common fund doctrine] is capable of great abuse, it is exercised only in exceptional circumstances and for dominating reasons of justice." *Id.* at 219–20 ¶ 27, 3 P.3d at 1139–40 (quoting Rossi, Attorneys Fees, Second Edition (Lawyers Cooperative Publishing Co. 1995)). Even assuming that the doctrine may apply in a case such as this (an issue we need not decide), we decline to award attorneys' fees in an exercise of our discretion.

## VI.

**¶42** We affirm the decision of the trial court.