IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

_____

**FRANK PICCIOLI, ET AL.,**
*Plaintiffs/Intervenors/Appellees/Cross-Appellants,*

*v.*

**CITY OF PHOENIX, ET AL.,**
*Defendants/Appellants/Cross-Appellees.*

_____

No. CV-19-0116-PR
Filed July 10, 2020
_____

Appeal from the Superior Court in Maricopa County
No. CV2012-010330
The Honorable Mark H. Brain, Judge
**REVERSED AND REMANDED**

_____

Opinion of the Court of Appeals, Division One
246 Ariz. 371 (App. 2019)
Filed April 2, 2019
**VACATED**

_____

COUNSEL:

Susan Martin (argued), Daniel L. Bonnett, Jennifer L. Kroll, Michael M. Licata, Martin & Bonnett, PLLC, Phoenix, Attorneys for Frank Piccioli, et al.

Eric M. Fraser (argued), Colin F. Campbell, Hayleigh S. Crawford, Osborn Maledon, P.A., Phoenix, Attorneys for City of Phoenix, et al.

_____

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL and JUSTICES BOLICK, GOULD, LOPEZ, MONTGOMERY, and JUDGE ESPINOSA[1] joined

_____

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1   The City of Phoenix pays pension benefits to eligible employees upon retirement. The amount of that benefit depends, in part, on a retiring employee's highest average annual compensation paid over a multi-year period. The City also pays employees for unused accrued sick leave upon retirement. Here, we decide whether a one-time payout for accrued sick leave forms part of an employee's compensation for purposes of calculating that employee's pension benefit. We hold it does not.

## BACKGROUND

¶2   Most City of Phoenix employees are members in the City of Phoenix Employees' Retirement Plan ("Plan"), a defined benefit plan codified in the Phoenix City Charter ("Charter"). A member is entitled to receive a pension upon retirement, which is determined by multiplying a member's "final average compensation," years of credited service, and a Plan-specified benefit rate. *See* Phx., Ariz., Charter ch. 24, art. 2, § 19.1. "Final average compensation" is the average of a member's highest annual compensation paid over a period of consecutive years, the length of which depends primarily on the member's hiring date. *See id.* §§ 2.14, 2.22–2.24. Compensation can be monetary ("salary or wages") or non-monetary. *See id.* § 2.13. For ease of reference, we refer to compensation used in

---

[1] Justice James P. Beene is recused. Pursuant to article 6, section 3 of the Arizona Constitution, Hon. Philip Espinosa, Judge of the Court of Appeals Division Two, was designated to sit in this matter.

calculating "final average compensation" as "pensionable" or "pensionable compensation."

**¶3**         The City provides paid sick leave to full-time employees "too ill or injured to be able to work safely." *See* Phx., Ariz., Personnel Rule 15(c). Employees earn sick leave hours regularly: hourly employees currently earn ten hours of sick leave per month, and salaried employees earn a day and one-quarter per month. *Id.* Sick leave accrues without limitation, meaning unused time can be accumulated and saved in a "leave bank." *See* Phx., Ariz., Admin. Reg. 2.441 (2012). The Plan provides that, for most members, any unused sick leave remaining at termination of employment, retirement, or death, shall be converted to credited service time, which is part of the pension benefit formula. *See* Phx., Ariz., Charter ch. 24, art. 2, §§ 14.4, 19.1(a).

**¶4**         In 1996, consistent with memoranda of understanding between the City and various unions, the City adopted Administrative Regulation ("A.R.") 2.441 to permit some employees to exchange a percentage of unused sick leave for a cash payout upon retirement. The trial court found that the primary purpose for adopting the regulation was to "encourage City employees not to abuse their sick leave during their employment by taking sick leave when they were not actually sick." Under A.R. 2.441, a retiring employee may "cash out" sick leave at the pay rate existing immediately before retirement, even if the employee accrued that leave at a lower pay rate. These payouts can be significant. For example, the average payout from 2009 to 2010 was $9,923. Any sick leave hours remaining after the one-time payout is converted to credited service time in accordance with the Plan. *See* Phx., Ariz., Admin. Reg. 2.441(3)(B); Phx., Ariz., Charter ch. 24, art. 2, §§ 14.4, 19.1(a).

**¶5**         Although not required to do so by the Plan or any regulation, from 1996 to mid-2012, the City included one-time accrued sick leave payouts in the calculation of final average compensation, thereby treating the payouts as pensionable and permitting members to increase or "spike" their pension benefits. The City consistently told members during this period that such payouts would be included in calculating pension benefits.

¶6        In 2012, after considering ways to reduce rising pension costs, the City eliminated the practice of including one-time payouts for accrued sick leave in the calculation of final average compensation. It amended A.R. 2.441 to exclude payouts made upon retirement for unused sick leave accrued *after* July 1, 2012 as pensionable compensation. As a result, such payouts are no longer included in calculating a retiring member's final average compensation, generally lowering pension benefits for members. The amended regulation is prospective, however, meaning the City will continue to include payouts for sick leave accrued *before* July 1, 2012 in calculating a member's final average compensation.

¶7        Petitioners are individual Plan members and unions that represent Plan members under the City's meet-and-confer ordinance (collectively, "Petitioners"). *See* Phx., Ariz., Code § 2-214(B) (providing that public employees, with exception, have "the right to be represented by an employee organization of their own choosing, to meet and confer" with their employer "in the determination of wages, hours and working conditions, and to be represented in the determination of grievances arising thereunder"). Several days before the effective date of the amendment to A.R. 2.441, they sued the City, the Plan, and the City of Phoenix Employees' Retirement Plan Board (collectively, the "City") seeking declaratory, injunctive, and mandamus relief based on allegations the amendment unlawfully "redefine[d] and limit[ed] the Charter's definition of compensation and final average compensation" by not considering accrued sick leave payouts upon retirement as pensionable compensation. Consequently, they alleged, the City diminished and impaired their vested rights to pension benefits in violation of the Pension and Contract Clauses of the Arizona Constitution, *see* Ariz. Const., art. 2, § 25; *id.* art. 29, and the Contract Clause of the Federal Constitution, *see* U.S. Const. art. 1, § 10.

¶8        After a bench trial, the trial court entered judgment in favor of Petitioners. It characterized sick leave as "non-monetary compensation" under the Plan with a value fixed by the payout amounts established by the City. The court ruled that Petitioners therefore had common law and constitutional rights to have one-time payouts for accrued sick leave included in the calculation of final average compensation, and the City could not unilaterally amend A.R. 2.441 to discontinue the practice for

4

Petitioners. The court awarded Petitioners monetary damages and equitable relief.

¶9    The court of appeals reversed. *Piccioli v. City of Phx.*, 246 Ariz. 371 (App. 2019). It disagreed that the one-time payouts upon retirement set the value for non-monetary compensation under the Plan. *Id.* at 375 ¶ 14 ("The accrued sick leave benefits are paid in money, and the City Council need not determine their value . . . ."). The court also rejected Petitioners' alternate argument that the payouts are "salary or wages" and therefore pensionable under the Plan. *Id.* at 375–77 ¶¶ 15–21. Finally, the court concluded that the City's administrative practice of treating sick leave payouts as pensionable from 1996 to mid–2012 did not confer common law or constitutional rights on Petitioners to continuation of that practice. *Id.* at 380 ¶ 37.

¶10    We accepted review to provide guidance concerning the interpretation of public employee pension plans, a matter of statewide importance.

## DISCUSSION

### I.

¶11    Public employee pension rights are well protected in Arizona. Under our constitution, "[m]embership in a public retirement system is a contractual relationship." *See* Ariz. Const. art. 29, § 1(C). As such, it is protected by our Contract Clause, *id.* art. 2, § 25, which prohibits laws "impairing the obligation of a contract." *See id.* art. 29, § 1(C); *see also* U.S. Const. art. 1, § 10 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."). Pension benefits are additionally protected by the Pension Clause, Ariz. Const. art. 29, § 1(D), which, with exceptions inapplicable here, prohibits benefits from being "diminished or impaired." *See Fields v. Elected Officials' Ret. Plan*, 234 Ariz. 214, 218 ¶ 17 (2014) ("The Contract Clause applies to the general contract provisions of a public retirement plan, while the Pension Clause applies only to public retirement benefits."). Neither the Pension Clause nor the Contract Clause, however, provides an independent source of substantive rights; they "only protect

whatever pension rights [members] ha[ve] under applicable law." *See Cross v. Elected Officials Ret. Plan*, 234 Ariz. 595, 599 ¶ 9 (App. 2014).

¶12　　　A public employee's pension rights vest "upon acceptance of employment." *Fields*, 234 Ariz. at 221 ¶ 31 (quoting *Yeazell v. Copins*, 98 Ariz. 109, 115 (1965)). These rights include using the benefit calculation formula in place at the start of employment, together with any beneficial changes made to that formula during employment. *Id.* at 220 ¶ 27. Thus, if Petitioners had rights before 2012 to include one-time payouts for accrued sick leave in their "final average compensation," the City cannot eliminate that practice for Petitioners without their consent. *See Hall v. Elected Officials' Ret. Plan*, 241 Ariz. 33, 41 ¶ 23 (2016) (holding that the legislature's unilateral increase of statutory contribution rate and detrimental change to statutory formula granting permanent benefit increases breached public employees' employment contracts); *Fields*, 234 Ariz. at 216 ¶ 1 (concluding the legislature violated the Pension Clause by changing an existing statutory formula for calculating benefit increases for retired members); *Yeazell*, 98 Ariz. at 116 (holding that a municipality could not calculate a police officer's pension benefit using a statutory formula that was less beneficial than one existing at the start of employment as doing so without the officer's assent would alter the employment contract). Whether such rights exist depend on the Plan's terms and, alternately, whether Petitioners had an independent contractual right to include these payouts in the benefit formula calculation.

**A.**

¶13　　　The primary issue here is whether a one-time payout for accrued sick leave upon retirement is "compensation" under the Plan that must be included when calculating a member's "final average compensation," which is used in determining the pension benefit amount. Resolution of this issue turns on the meaning of "compensation," which the Plan defines as "a member's salary or wages paid him by the City for personal services rendered by him to the City." *See* Phx., Ariz., Charter ch. 24, art. 2, § 2.13. If part of a member's salary or wages is non-monetary, "the City Council shall, upon recommendation of the City Manager, fix the value of [that] portion." *Id.*

¶14　　　Petitioners do not urge us to adopt the trial court's ruling that sick leave is non-monetary compensation whose value is established by

payout amounts. Instead, they argue these payouts are monetary "salary or wages" that must be included when calculating "final average compensation." The Plan does not define "salary or wages," and the parties attach differing meanings to the term.

¶15  Because the Plan is set out in the Charter, which is "effectively, a local constitution," *State ex rel. Brnovich v. City of Tucson*, 242 Ariz. 588, 598 ¶ 39 (2017) (quoting *City of Tucson v. State*, 229 Ariz. 172, 174 ¶ 10 (2012)), we review its interpretation de novo as a matter of law, *see Twin Cities Fire Ins. Co. v. Leija*, 244 Ariz. 493, 495 ¶ 10 (2018). We interpret the Plan to effectuate the intent of the voters who adopted it. *See Fields*, 234 Ariz. at 219 ¶ 19. In doing so, we give words their ordinary meanings, *see Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 562 ¶ 14 (2017), unless the context suggests otherwise, *see Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). We may also examine the Plan as a whole along with related provisions in the Charter to interpret specific Plan provisions. *See id.* If the Plan is "subject to only one reasonable interpretation, we apply it without further analysis." *See Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015). If more than one reasonable interpretation exists, we will consider secondary principles, including the purpose of the Plan and the effects and consequences of different interpretations, to identify the correct one. *See id.*

¶16  Petitioners urge several arguments supporting their position that "salary or wages" should be broadly defined as any remuneration given in exchange for personal services, including the one-time sick leave payouts here. Specifically, they assert that (1) the Court should defer to the City of Phoenix Employees' Retirement Plan Board's historical interpretation of "salary or wages" as including one-time payouts for unused sick leave; (2) the plain meaning of "salary or wages," as existing when voters adopted the Plan in 1953, includes sick leave payouts; and (3) even if the term is ambiguous, secondary principles support Petitioners' interpretation of "salary or wages" as including one-time payouts.

¶17  In *American Federation of State, County & Municipal Employees AFL-CIO Local 2384 v. City of Phoenix* (*AFL-CIO Local 2384*), ___ Ariz. ___, ___ ¶ 17 (2020), filed contemporaneously with this opinion, we defined "salary or wages" under the Plan in deciding whether one-time payouts for accrued vacation leave upon retirement or separation from employment

constitute pensionable compensation under the Plan. After rejecting the same arguments raised here, we concluded that, viewed in context, "'salary or wages' can only reasonably mean fixed amounts paid annually to members at regular, periodic intervals in return for their services," which precludes "irregular, one-time payments made to members upon separation or retirement to recoup the value of unused benefits previously bestowed in return for personal services." *Id.* Applying this definition, we held that one-time payouts for accrued vacation leave upon retirement or separation from employment are not "salary or wages" because they are not paid annually or at regular intervals. *Id.* ¶ 25.

**¶18** No reason exists to treat one-time payouts for accrued sick leave upon retirement differently from one-time payouts for accrued vacation leave upon retirement or separation from employment. Like the latter, sick leave payouts are not paid regularly or annually; they are paid once and only upon retirement. *See id.* ¶¶ 18–20. Also, just as treating one-time payouts for unused vacation leave as "salary or wages" would violate the Plan by adding days, weeks, or months to the pension-calculation period, so would treating payouts for unused sick leave as "salary or wages." *See id.* ¶ 21. Finally, as with one-time payouts for accrued vacation leave, nothing in the Plan indicates that voters in 1953 wished to give members who banked sick leave more lucrative pension benefits than members who used that time when too ill to work. *See id.* ¶¶ 22–23.

**¶19** Petitioners nevertheless argue that even if "salary or wages" has a "regularity" requirement, the one-time payouts for accrued sick leave satisfy it. They point out that sick leave hours accrue for "each month of paid service," and liken the one-time payouts upon retirement to deferred salary or wages for personal services. We disagree. Although sick leave time accrues regularly, payouts for unused time are not made regularly or annually. They are only made once, upon retirement. Also, payouts are not made at the pay rate existing when the services were performed, as would be expected if the payouts compensated members for those services. And if the payouts constitute "deferred" payments for personal services, they would be due to all members. Yet members who separate from employment without retiring and the estates of members who die during employment are not eligible for such payouts. *See* Phx., Ariz., Admin. Reg.

2.441(1) (stating the regulation "establishes guidelines for the payment of accumulated sick leave hours at the time of retirement").

**¶20** Finally, the Plan's unique treatment of sick leave further persuades us that one-time payouts for accrued sick leave upon retirement are not "salary or wages." In 1973, voters amended the Plan to provide that most members shall be granted credited service equal to the period of unused sick leave remaining at retirement, death, or separation from employment. *See* Phx., Ariz., Charter ch. 24, art. 2, § 14.4. With voters explicitly incorporating unused sick leave to determine credited service as part of the Plan's benefit calculation formula, it would be extraordinary to further utilize payouts for that same leave to calculate final average compensation, another formula component. *See id.* § 19.1 (calculating benefit as final average compensation x credited service x defined benefit rate). Absent language to the contrary, we will not assume the Plan intended this two-bites-of-the-apple approach to calculating pension benefits, particularly as those bites are denied to those who separate from employment without retiring and to the estates of members who die. *See AFL-CIO Local 2384*, ___ Ariz. at ___¶ 23 ("If voters intended unequal treatment, we would expect to see language in the Plan to that effect.").

**¶21** In sum, applying the above analysis and our holding in *AFL-CIO Local 2384*, we conclude that one-time payouts for accrued sick leave upon retirement are not "salary or wages" under the Plan because they are not paid annually or at regular intervals.

**B.**

**¶22** Petitioners alternately argue that regardless of the Plan's benefit formula, the City's pre-2012 promises to members that it would treat one-time sick leave payouts as pensionable compensation, together with the historical fulfillment of those promises, formed "pension benefit contracts" independent of the Plan and granted Petitioners vested rights to that practice. By amending A.R. 2.441 to eliminate that practice, Petitioners contend, the City breached those contracts and impaired vested rights protected by the Contract and Pension Clauses.

9

**¶23** Petitioners in *AFL-CIO Local 2384* raised these same arguments in the context of one-time payouts for vacation leave upon retirement or separation from employment, and we rejected them. *See id.* ¶¶ 26–32. There is no reason to reach a different conclusion here. Consequently, for the reasons explained in *AFL-CIO Local 2384*, Petitioners do not have contractual rights independent of the Plan to include one-time payouts for accrued sick leave in the Plan's benefit calculation formula. Thus, the City did not violate any vested rights by prospectively eliminating payments for leave accrued after July 1, 2012, from the calculation of final average compensation.

## II.

**¶24** Petitioners and the City both request an award of attorney fees pursuant to A.R.S. § 12-341.01, which authorizes us to award the successful party reasonable attorney fees in "any contested action arising out of a contract." Because Petitioners are not the successful parties, we deny their request. In the exercise of our discretion, we grant the City's request. This case is distinguishable from *Wistuber v. Paradise Valley Unified School District*, 141 Ariz. 346, 350 (1984), which stated that courts should generally refrain from awarding fees under § 12-341.01 against citizens who sue to challenge the legitimacy of government action because it would "chill" such suits. Here, Petitioners challenged A.R. 2.441 as parties to a contract rather than as aggrieved citizens.

## CONCLUSION

**¶25** We reverse the trial court's judgment and remand for entry of judgment in favor of the City. Although we agree with the court of appeals' disposition, we vacate its opinion to replace its reasoning with our own.