RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

TOMMY PUCKETT; ROGER M. VANCE, JR.,

*Plaintiffs-Appellants,*

*v.*

No. 15-6097

LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT, et al.; COMMONWEALTH OF KENTUCKY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:13-cv-00295—Karen K. Caldwell, Chief District Judge.

Argued: April 21, 2016

Decided and Filed: August 15, 2016

Before: DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** James M. Inman, GREEN CHESNUT & HUGHES, PLLC, Lexington, Kentucky, for Appellants. Keith Moorman, FROST BROWN TODD, Lexington, Kentucky, for Appellee Lexington-Fayette Urban County Government, et al. Joseph A. Newberg, II, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee Commonwealth of Kentucky. **ON BRIEF:** James M. Inman, Ronald L. Green, GREEN CHESNUT & HUGHES, PLLC, Lexington, Kentucky, for Appellants. Keith Moorman, FROST BROWN TODD, Lexington, Kentucky, for Appellee Lexington-Fayette Urban County Government, et al. Benjamin Long, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee Commonwealth of Kentucky.

CLAY, J., delivered the opinion of the court in which DAUGHTREY and STRANCH, JJ., joined. STRANCH, J. (pp. 24–25), delivered a separate concurring opinion in which DAUGHTREY, J., joined.

_____

**OPINION**

_____

CLAY, Circuit Judge.  Plaintiffs in this case are retired public employees who contend they have a contract with the State of Kentucky entitling them to have their base pension benefit annually adjusted by the specific cost of living adjustment ("COLA") formula in existence at the time they retired.  Plaintiffs brought suit under 42 U.S.C. § 1983 against a number of individual state officers, the Lexington-Fayette Urban County Government (the "LFUCG"), and the Commonwealth of Kentucky (the "Commonwealth").  Their complaint alleged violations of the Contract, Due Process, and Takings Clauses of the Federal Constitution, as well as state constitutional analogues and statutes, and sought declaratory and injunctive relief.  Upon Defendants' motion to dismiss, the district court ruled that Plaintiffs had no such contractual right to an unchangeable COLA formula, and that therefore, they had not stated a claim under the Contract, Due Process, and Takings Clauses of the Federal Constitution, or the Kentucky Constitution.  Plaintiffs now appeal the district court's judgment, and we **AFFIRM.**

**BACKGROUND**

Plaintiff Tommy Puckett retired from the LFUCG Division of Police in 2009, after thirty-six years of service with the LFUCG.  Plaintiff Roger M. Vance retired from the LFUCG Division of Fire and Emergency Services in 2010, after twenty-four years of service with the LFUCG.  Plaintiffs are members of the LFUCG Policemen's and Firefighters' Retirement Fund (the "Fund"), a retirement and benefit fund for members of the LFUCG police and fire departments.  The Fund is governed by the Police and Firefighters' Retirement and Benefit Fund Act, KRS 67A.360-67A.690 (the "Act").  As members of the Fund, Plaintiffs receive service retirement annuities under the Act, in addition to COLAs.

The Act has been amended several times since its enactment, most notably in 1980 and 2013.  The 1980 amendments to the Act increased the COLA rate and also the rate at which members were required to contribute to the Fund.  *See* 1980 Ky. Acts ch. 329, §§ 1-3. Under the 1980 amendments, the Act provided service retirement annuities with COLAs of 2 to 5 percent

per year, with the exact amount determined by the Fund's board of trustees. *See* KRS 67A.690(1) (2002). When Plaintiffs retired in 2009 and 2010, that version of the Act was in place.

On March 14, 2013, the Kentucky General Assembly, at the request of the LFUCG, passed emergency legislation amending the Act again, this time to reduce the annual COLA paid to members of the Fund. Under the amended version of the Act, when the Fund's actuarial funding level exceeds 85 percent, Fund members who have participated in the Fund before the effective date of the amendment continue to receive COLAs of 2 to 5 percent per year. *See* KRS 67A.690(1). On the other hand, Fund members who joined the Fund after the effective date of the amendment will receive a COLA of up to 3 percent. *Id.*

However, when the Fund's actuarial funding level is lower than 85 percent, the amended version of the Act reduces the COLA for all Fund members, tiered to their annual pension income. *See id.* Under the Act's tiered approach, those Fund members making up to $39,999 get a two percent COLA; those making between $40,000 and $74,999 get a one and a half percent COLA; those making $75,000 to $99,999 get a one percent COLA; and those making more than $100,000 get a zero percent COLA until January 1, 2016, at which point they get COLAs reinstated. *See id.* The amended version of the Act now applies to Plaintiffs' pension plan and determines the COLA amount they receive.

On September 11, 2013, Plaintiffs filed suit against the LFUCG, the Commonwealth, and a number of individual state officers. Their complaint alleged that the 2013 amendments unconstitutionally altered the COLA increases that they are contractually entitled to receive, in violation of the Contract, Due Process, and Takings Clauses of the Federal Constitution, as well as a corresponding provision in the Kentucky Constitution. More specifically, Plaintiffs alleged that they had a contractual right to the specific COLA in effect at the time they retired, for the rest of their lives without change.

Each defendant filed separate motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In a single order, the district court granted the motions. The district court found that the existence of a claimed contractual right for purposes of a Contract Clause claim

requires a clear indication that the legislature intended such a contractual right, and the Kentucky legislature never bound itself to calculating retirement benefits based upon an unchangeable COLA. Finding no such enforceable contract, the district court dismissed the Contract, Due Process, and Takings Clause claims, and also dismissed the state law claims under the supplemental jurisdiction principles of 28 U.S.C. § 1367.

Plaintiffs then moved to alter or amend the court's order dismissing their case under Fed. R. Civ. P. 59(e). They also asked for leave to amend their complaint under Fed. R. Civ. P. 15(a). The district court denied both requests and this appeal followed.

## DISCUSSION

### I.    Jurisdiction

As a threshold matter, we must determine whether we have jurisdiction over the claims against the Commonwealth, as sovereign immunity generally shields a state from suit. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). Even though the district court did not address this issue when it granted Defendants' motion to dismiss, we must, as in every case, consider our jurisdiction over the appeal. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). We review *de novo* the constitutional question of whether the Commonwealth is entitled to sovereign immunity. *S.J. v. Hamilton County*, 374 F.3d 416, 418 (6th Cir. 2004).

It is well established that states "possess[ ] certain immunities from suit in . . . federal courts." *Ernst*, 427 F.3d at 358 (citations omitted). The nature of a state's immunity "flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution." *Id.* (citation omitted). "The immunity also applies to actions against state officials sued in their official capacity for money damages." *Id.* This is because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," *i.e.*, against the state itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908)

applies; and (3) when Congress has clearly and expressly abrogated the state's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citation omitted). Because Kentucky has not expressly consented to suit in this case,[1] and there is no question that Congress has not abrogated Kentucky's immunity here, only the second exception is implicated in this case.

The *Ex parte Young* doctrine applies when the lawsuit involves an action against state officials, not against the state itself. *Id.* at 507-08. Under the doctrine, "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, regardless of whether compliance might have an ancillary effect on the state treasury." *Id.* at 507 (citation omitted). "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Id.* at 507-08. However, the *Ex parte Young* doctrine "does not . . . extend to any retroactive relief." *Id.* at 508.

In the instant case, the *Ex parte Young* doctrine is applicable to permit suit against the individual state officers pursuant to 42 U.S.C. § 1983 for the alleged violations of the Contract, Due Process, and Takings Clauses because the complaint alleges an ongoing violation of federal law and seeks prospective relief. *See League of Women Voters v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008). However, the Eleventh Amendment bars this suit against the Commonwealth itself. The Commonwealth is of course a state for purposes of sovereign immunity. Although the doctrine of sovereign immunity is subject to several exceptions, *see, e.g.*, *Ernst*, 427 F.3d at 358-59 (listing several exceptions to sovereign immunity), none of those exceptions apply here. Therefore, we are without jurisdiction to consider the claims against the Commonwealth based on Eleventh Amendment sovereign immunity principles.

## II.    Right to an Unchangeable COLA

The question here is one of first impression in this circuit: whether the legislature's statutory scheme for reducing the extent of future COLA increases to retired county workers constituted an unconstitutional impairment of contracts, a denial of due process, or resulted in an unconstitutional taking. We answer this question in the context of a motion to dismiss the

---

[1]The Commonwealth did not file an answer but rather raised the immunity defense in its motion to dismiss. That was sufficient to defeat any argument that the immunity issue had been waived. *See id.* at n.4.

complaint, where we must "accept all factual allegations as true," construing the complaint "in the light most favorable to the plaintiff[s]." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We review the district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

### a. Contract Clause

The starting point in this analysis is the Contract Clause, which provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. The Supreme Court, however, does not interpret this wording as an absolute bar on the impairment of either governmental or private contractual obligations. *See U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 21 (1977) ("'[T]he prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.'" (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428 (1934))).

Courts apply a two-part test to determine whether a state law violates the Contract Clause. First, courts ask "whether the change in state law has 'operated as a substantial impairment of a contractual relationship.'" *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). If so, the court must then determine whether the impairment is justified as "reasonable and necessary to serve an important public purpose." *U.S. Trust Co.*, 431 U.S. at 25. But when the state itself is a party to a contract, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." *Id.* at 26. The Supreme Court expressed this skepticism because "[a] governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *Id.*

Whether the state law is a substantial impairment of a contractual relationship is analyzed in three parts: (1) whether there is a contractual relationship; (2) whether a change in law impairs the contractual relationship; and (3) whether the impairment is substantial. *Romein*, 503 U.S. at 186; *see also Wojcik v. City of Romulus*, 257 F.3d 600, 612 (6th Cir. 2001) (applying the three-part test from *Romein*).

Our analysis in this case begins and ends at the first step of the test. Upon our *de novo* review, we conclude that Plaintiffs did not plead facts demonstrating the existence of a contractual relationship establishing a vested contract right. And since we find no contract, we need not reach the issues of impairment or substantiality, as we discuss more fully below. *See, e.g., Romein*, 503 U.S. at 186-87 ("[W]e need not reach the questions of impairment, as we hold that there was no contractual agreement regarding the . . . [benefits] allegedly at issue.").

#### i.          *The Unmistakability Doctrine*

In order for a legislative enactment to be deemed a contract for the purposes of the Contract Clause, there must be a clear indication that the legislature intends to bind itself in a contractual manner. *See Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985) ("[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79 (1937))); *U.S. Trust Co.*, 431 U.S. at 17-18 n.14 (a statute may be treated as a binding contract "when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.").

The presumption that a law is not intended to create private contractual rights is known as the "unmistakability doctrine." *United States v. Winstar Corp.*, 518 U.S. 839, 871 (1996). In *Winstar*, the Supreme Court explained that the purpose of the doctrine is to avoid unnecessarily infringing on a state legislature's ability to legislate regarding state sovereign rights unless it is clear beyond any doubt that the legislature meant to give up that right. *Id.* at 873-76. Therefore, "'neither the right of taxation, nor any other power of sovereignty, will be held . . . to have been

surrendered, unless such surrender has been expressed in terms too plain to be mistaken.'" *Id.* at 874-75 (quoting *Jefferson Branch Bank v. Skelly*, 66 U.S. (1 Black) 436, 446 (1861)). The requirement "that the government's obligation unmistakably appear thus served the dual purposes of limiting contractual incursions on a State's sovereign powers and of avoiding difficult constitutional questions about the extent of state authority to limit the subsequent exercise of legislative power." *Id.* at 875.

To determine whether a legislature intended to bind itself contractually, courts examine both the language of the statute itself and the circumstances surrounding its enactment or amendment—such as its apparent purpose, context, legislative history, or any other pertinent evidence of actual intent. *U.S. Trust Co.*, 431 U.S. at 17-18 n.14; *see, e.g., Me. Ass'n of Retirees v. Bd. of Trs. of Me. Pub. Ret. Sys.*, 758 F.3d 23, 29-30 (1st Cir. 2014). Our role, therefore, is to determine whether the Act evinces a clear intent on the part of the Kentucky legislature to create contractual rights against the modification of a specific COLA formula. It is the burden of the party asserting the contract to overcome the presumption that a law is not intended to create private contractual or vested rights. *Nat'l R.R. Passenger Corp.*, 470 U.S. at 466.

### ii.        The Act

With this framework in mind, we turn to the Act itself to look for any evidence of whether Plaintiffs have a contractual right to the specific COLA formula in existence at the time they retired. This case is not about whether Plaintiffs have a contractual right to their base monthly benefits, or even whether the Act creates some contractual obligations to Fund members. What this issue comes down to is whether Plaintiffs have a constitutionally protected contractual right to a specific COLA formula. For the purposes of this opinion, therefore, we will assume that the Act creates some contractual obligations and narrow the focus to whether a specific COLA formula is included in that obligation.

Like the district court, we cannot find any language within the Act, or anything in the legislative history, that would indicate any expression of intent by the legislature to create a contract. There is no provision in the Act that gives retirees an immutable lifetime entitlement to COLA increases in their public pensions under pre-2013 terms, much less with unmistakable

clarity.  The only mention in the Act of a vested interest is in Section 610, which provides just that Fund members have a vested interest in their contributions to the Fund:

> Each member shall, by virtue of the payment of contributions to the fund, receive a vested interest in such contributions, and in consideration of such vested interest, shall be conclusively deemed to undertake and agree to pay the same and to have the amounts deducted from his salary as herein provided.  After August 1, 1982, employee contributions shall be picked up by the urban-county government pursuant to KRS 67A.510(2).

KRS 67A.610.

Under the unmistakability doctrine, Plaintiffs have the burden of showing that the Act contains an unmistakable promise precluding the Kentucky legislature from exercising its sovereign power to reduce the extent of their future COLA increases.  None of the provisions of the Act demonstrate an intent on the part of the legislature to bind itself to a contract, and Plaintiffs do not meet their burden by pointing to any specific language in the Act or the legislative history (or to other pertinent evidence) indicating an intent to contract with respect to COLA increases.  Because the Act contains no language evincing a clear and unequivocal intent to create a binding contract, Plaintiffs cannot establish a violation of the Contract Clause as a matter of law.

### iii.    *Plaintiffs' Arguments*

Plaintiffs raise a number of arguments on appeal, but their core argument is that they have a constitutionally protected contractual right to a specific COLA formula.  Most of their arguments focus on whether they have a vested interest in their annuities or whether the Act creates some contractual obligations to them.  But as discussed above, the issue here is more narrow than that: the only question is whether Plaintiffs have a contractual right to the specific COLA formula in existence at the time they retired.  Therefore, the two cases on which Plaintiffs rely, *Board of Education of Louisville v. City of Louisville*, 157 S.W.2d 337 (Ky. 1941) and *Public Employees' Retirement Board v. Washoe County*, 615 P.2d 972, 974 (Nev. 1980), are distinguishable from this case because those cases involved whether the retirees' pension rights had vested, and whether those rights guaranteed them a certain level of retirement income based on their contributions.  Because those cases discuss only whether retirees have rights to their

underlying pension, and not whether specific COLAs are included in that right, their persuasive value is minimal.

Plaintiffs then argue that the 1980 amendments to the Act, which simultaneously increased the COLA rate and also the rate at which members were required to contribute to the Fund, show a bargained-for exchange: *i.e.*, that in exchange for making higher contributions to the Fund, they received a higher COLA. The problem with this argument, as the district court noted, is that without more specific factual allegations, such as relevant legislative history or bargaining negotiations, the legislature's simultaneous amendment of these two provisions alone does not indicate any expression of intent by the legislature to create a contract—especially in the context of the unmistakability doctrine.

Plaintiffs also argue that COLAs are part of the Fund's underlying annuities, and therefore, just like the underlying annuity payments, are protected against legislative reduction.[2] Plaintiffs point out that there is no language in the Act which treats COLAs any different from the underlying annuities. Moreover, they say, the Kentucky General Assembly has, in other pension-related statutes, explicitly distinguished the annuity benefit from COLAs to that benefit.[3] Plaintiffs therefore ask us to make a negative inference from silence: *i.e.*, that because the legislature did not expressly exempt COLAs from the benefits protected by contract, as it had in other statutes, the legislature intended to create contractual rights against the modification of a specific COLA formula.

While this interpretation is possible, it is at odds with the unmistakability doctrine. The protection described in Section 630 extends only to specifically defined retirement benefits, and

---

[2]KRS 67A.630 states, in pertinent part (emphasis added):

Any service retirement annuity, disability retirement annuity, or any other annuity provided herein shall be payable in equal monthly installments as life annuities, and *shall not be increased, decreased, revoked, or repealed*, except for error, or except where specifically otherwise provided.

[3]*See* KRS 6.521(2) and (3)(f) (providing that the COLA benefits of the Kentucky Legislators' Retirement Plan "shall not be considered as benefits protected by the inviolable contract provisions of KRS 6.505."); KRS 21.405(4) and (5)(f) (also providing that the COLA benefits of the Kentucky Judicial Retirement Plan "shall not be considered as benefits protected by the inviolable contract provisions of KRS 21.480."); KRS 61.691(1) and (2)(f) (same, as applied to the Kentucky Employee Retirement System). Defendants respond that the statutory plans to which Plaintiffs point are distinguishable because each contains language declaring that plan an "inviolable contract" to which these exceptions are directed.

we "cannot say that COLAs unmistakably fall within the umbrella of benefits that" Section 630 protects. *Me. Ass'n of Retirees*, 758 F.3d at 30. To prevail under the Contract Clause, Plaintiffs must show that it is unmistakably clear that COLAs fall within the ambit of benefits the Kentucky legislature is contractually obligated not to reduce. However, Plaintiffs do not point us to, and we have not been able on our own to find, any aspects of the statutory framework, legislative history, or surrounding circumstances which would suggest that the legislature intended to prohibit future legislatures from modifying that specific COLA formula.

Lastly, Plaintiffs argue that the pre-amendment COLA rate of 2 to 5 percent constitutes deferred compensation earned during their employment. However, this argument, more or less, is an argument that Plaintiffs' vested annuity payments are not distinct and separate from the annual COLAs to those benefits. But again, the Act must be read against the backdrop of the unmistakability doctrine and nothing in the Act shows that COLAs are unmistakably part of the Fund's underlying annuities. Moreover, when presented with the same argument, *i.e.*, that the COLA portion of an annuity payment is a form of deferred compensation, the Federal Circuit reasoned persuasively: "Even if we had held that the retirement benefits (including COLA formulas) are an incident of employee compensation to which the retirees have an indefeasible right, . . . the COLA portion until received by way of an increased annuity is nothing more than a government fostered expectation that retirees will be provided retirement annuities which will not be ravaged by inflation." *Zucker v. United States*, 758 F.2d 637, 640 (Fed. Cir. 1985) (citations and quotation marks omitted).

### iv.    *Guidance from Other Courts*

Almost every court to have considered the issue has rejected claims that statutory pension schemes and provisions about COLAs created contract rights subject to the constraints of the Contract Clause. *See, e.g.*, *Me. Ass'n of Retirees*, 758 F.3d at 31 (finding that the statutory language was at best ambiguous, and therefore the retirees could not meet their burden to show that the legislature unmistakably intended to create contractual rights to COLAs according to the formula in effect at the time they retired); *Am. Fed'n of Teachers-N.H. v. State of N.H.*, 111 A.3d 63, 72 (N.H. 2015) (pension plan members did not have vested rights to a COLA where the court was "not persuaded that the statutory language established a contractual obligation to provide a

COLA."); *Justus v. State*, 336 P.3d 202, 211-12 (Colo. 2014) (statute does not contain "contractual or durational language stating or suggesting a clear legislative intent to bind itself, in perpetuity, to paying . . . a specific COLA formula"); *Bartlett v. Cameron*, 316 P.3d 889, 895 (N.M. 2013) (finding that several amendments to the statute's COLA provision showed the legislature's intent to promote public policy, and not a clear and unambiguous intent to protect a vested contract right to paying a specific COLA).

Only in very limited circumstances have courts found that state pensioners had a right to a specific COLA formula. For example, in *Hon. Fields v. Elected Officials' Ret. Plan*, 320 P.3d 1160 (Ariz. 2014), the Arizona Supreme Court looked to the state's constitution, which said that public retirement benefits "shall not be diminished or impaired." *Id.* at 1163 (quoting Ariz. Const. art. XXIX, § 1(C)). Based on that provision, the court held that changes to the statutory formula for pension benefit increases violated the state constitution, and rejected the argument that the term "benefit" "only includes the right to receive payments in the amount determined by the most recent calculation." *Id.* at 1165.

Rather, the court explained, the "benefit" protected by the state constitution's Pension Clause "necessarily includes the right to use the statutory formula" and that formula included COLA increases. *Id.* at 1166. The court held that the plaintiff (a retired judge) "has a right in the existing formula by which his benefits are calculated as of the time he began employment and any beneficial modifications made during the course of his employment." *Id.* Therefore, the court concluded, the increase in COLA benefits was a "benefit" for purposes of the constitution's Pension Clause. *Id.*

The court's analysis was largely based upon the state constitution's Pension Clause, which the court said "confers *additional*, independent protection for public retirement benefits separate and distinct from the protection afforded by the Contract Clause." *Id.* at 1164-65 (emphasis added). It is for this reason that we reject the Arizona Supreme Court's reasoning and instead go along with what the majority of courts have said—including the only federal circuit court to rule on the issue. The use of the word "additional" indicates that Arizona's Pension Clause confers greater rights to pension benefits than the Contract Clause. The Kentucky Constitution, by contrast, contains no such language or analogous statement of policy.

Moreover, the purpose of a COLA goes against the Arizona Supreme Court's ruling. A COLA is an *adjustment* to a retiree's annuity payment—not a benefit itself. Because a COLA is meant to minimize the effect of inflation, it does not make sense that the legislature would bind itself to a fixed COLA of 2 to 5 percent per year. It makes more sense that the legislature be able to adjust the COLA rate based on changes in inflation over time.

We are, of course, sympathetic to Plaintiffs in this case, who gave years of dedicated and honorable service to their communities. We also acknowledge the likelihood that they believed their COLAs would always be set at 2 to 5 percent per year. Nevertheless, they were required to plead facts showing a clear intent on the part of the Kentucky legislature to create contractual rights against the modification of a specific COLA formula. Because Plaintiffs did not do so, they failed to plead a violation of the Contract Clause as a matter of law.

### b.        *Due Process Clause*

The second issue is whether Plaintiffs stated a plausible Due Process claim. Plaintiffs allege both procedural and substantive due process violations. With respect to procedural due process, they argue that the 2013 amendments were rushed through the legislature and improperly designated as emergency legislation under Ky. Const. § 55. Plaintiffs claim that because of the manner in which the amendments were made, they "were denied the representation in the decision-making process provided to retired members of the Fund in KRS 67A.530 by the Defendants' actions." (R. 1, Complaint, PageID# 16, ¶ 66.) With respect to substantive due process, Plaintiffs claim that the 2013 amendments were without any rational basis.

### i.        *Elements of a Due Process Claim*

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. We have interpreted the Fourteenth Amendment to protect both procedural and substantive due process rights. *See, e.g.*, *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 572-74 (6th Cir. 2008); *Wojcik*, 257 F.3d at 609-11. "Procedural and substantive due process claims are examined under a two-part analysis. First, the Court must determine whether the

interest at stake is a protected liberty or property interest under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened the notions of due process" under the Fourteenth Amendment. *Wojcik*, 257 F.3d at 609 (citations and quotation marks omitted).

In explaining what constitutes a sufficient property interest under the Fourteenth Amendment, we have clarified that "[e]ven though individuals often claim property interests under various provisions of the Constitution, such interests are not created by the Constitution." *Id.* Instead, they "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Ziss Bros. Constr. Co., v. City of Independence, Ohio*, 439 F. App'x 467, 471 (6th Cir. 2011) (citations and quotation marks omitted).

A contract, such as one giving the right to COLAs calculated according to pre-2013 law, may create a property interest under the Due Process Clause. *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). However, "to have a property interest in a contractual benefit, a person must have a legitimate claim of entitlement to it." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 432 (6th Cir. 2014) (per curiam) (en banc) (citations and quotation marks omitted). We have recognized that "a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).

In the instant case, to establish a property interest in the right to COLAs calculated according to pre-2013 law, Plaintiffs "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [legislature] to rescind the benefit." *Id.* at 410. In other words, Plaintiffs have to show that the legislature intended to bind itself to providing a COLA of 2 to 5 percent per year. However, as discussed in Section II.A, *supra*, Plaintiffs have not made that showing here.

On appeal, Plaintiffs argue that the district court erred in finding that they did not have a reasonable expectation of entitlement to a specific COLA formula because the legislature had

discretion in awarding those payments; *i.e.*, they argue, the district court incorrectly found they had no property interest under the Fourteenth Amendment. First, it does not appear that the district court specifically ruled on whether Plaintiffs had any property interest. Rather, for purposes of its due process analysis, the district court assumed without deciding that Plaintiffs had a property interest in the right to COLAs calculated according to pre-2013 law. *See Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 60 F.Supp.3d 772, 777-78 (E.D. Ky. 2014). Second, in support of this argument, Plaintiffs argue that the language of the Act conferring the COLA payment is framed in mandatory terms and is therefore not subject to legislative discretion. Indeed, the pre-amended version of the Act states, in pertinent part:

> [T]he board *shall* increase his retirement annuity or the annuity paid to his widow or dependent children by not less than two percent (2%) nor more than five percent (5%) per year, compounded annually; and such increase *shall* be determined and granted annually thereafter by the board.

KRS 67A.690(1) (2002) (emphasis added).

Plaintiffs argue that by using the mandatory "shall" when describing a fixed rate COLA, the legislature evinced a clear intent to bind itself, and therefore, its decision to award specific COLAs is not discretionary but rather is mandated by statute. The Eastern District of Tennessee recently considered and rejected an identical argument. *See Frazier v. City of Chattanooga*, ___ F. Supp. 3d ___, 2015 WL 9309123 (E.D. Tenn. Nov. 23, 2015) (holding that the city did not give clear intention to create a contractually enforceable right to annual COLA increases to pension benefits in statute creating pension, and that the pension beneficiaries did not have a property right in annual COLAs to their benefits that was protected by the Due Process Clause). The court reasoned persuasively:

> The mere use of the word "shall" does not suffice to show a clear indication of intent to be bound. Legislatures often use the word shall to remove discretion from their agents. Read this way, the City Code removes any discretion on the part of the Fund by telling it exactly how to apply the COLA provision. Divining an intent to be bound solely from the use of mandatory wording would effectively remove a valuable linguistic tool from the legislature's lexicon and force the legislature to empower its agents with discretion lest it risk rendering its enactments binding on future legislatures. It is precisely to avoid these kinds of constraints on the legislature that courts require a "clear indication" before inferring intent to be bound.

*Id.* at 4 (citations omitted).

We agree with the Eastern District of Tennessee's reasoning in this regard. The legislature's use of the word "shall" by itself does not indicate a legislative purpose to be bound in perpetuity. However, we need not resolve this specific issue. Like the district court, we assume without deciding that Plaintiffs have a protected property interest implicating the Due Process Clause and proceed to analyze whether Plaintiffs' complaint states a plausible procedural and substantive due process claim. *See, e.g., Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 65-67 (2009) (assuming without deciding that the respondent "invoked the proper federal statute in bringing his claim" because the Court's "resolution of [respondent's] claims does not require us to resolve this difficult issue.").

### ii.     *Procedural Due Process*

Assuming *arguendo* that Plaintiffs have a protected property interest, the next question is whether their complaint states a plausible claim that they were denied adequate process prior to and following the deprivation.

The point of procedural due process is to "require procedural fairness and to prohibit the state from conducting unfair or arbitrary proceedings." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 740-41 (6th Cir. 2015). At its core, procedural due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 741 (citations and quotation marks omitted). We have clarified that the Due Process Clause is flexible and provides different levels of protection depending on the particular situation and circumstances of the deprivation. *See Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (recognizing that "the requirements of due process are fluid and fact dependent."); *see also Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961) ("[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.").

While it is somewhat difficult to parse, Plaintiffs' complaint essentially argues that the legislature denied them the requisite due process of law, that is, notice and opportunity for a

hearing, before amending the Act.  They base this claim on their argument that the amendments to the Act were improperly designated as emergency legislation under Ky. Const. § 55.  They argue from this that "there was no genuine emergency and they would have had additional time to force Defendants to follow the process due had an emergency not been declared."  (R. 24, Motion to Alter Judgment, PageID# 362-63.)

Section 55 of Kentucky's Constitution provides:

No act, except general appropriation bills, shall become a law until ninety days after the adjournment of the session at which it was passed, except in cases of emergency, when, by the concurrence of a majority of the members elected to each House of the General Assembly, by a yea and nay vote, entered upon their journals, an act may become a law when approved by the Governor; but the reasons for the emergency that justifies this action must be set out at length in the journal of each House.

Ky. Const. § 55.

The significance of Kentucky's emergency clause is that legislation containing such a clause becomes effective upon approval of the governor, instead of ninety days after adjournment of the session in which that legislation is passed.  Kentucky's Constitution requires the reason justifying the emergency to be "set out at length" in the act in order for it to be effective.  *See McIntyre v. Commonwealth*, 297 S.W. 931, 933 (Ky. 1927).

In this case, when the Kentucky General Assembly amended the Act, it gave the following reason for declaring an emergency situation:

Whereas the financial integrity of the pension funds administered by urban-county governments are imperative to the public employees, retirees, and taxpayers of urban-county governments, an emergency is declared to exist and this Act takes effect upon its passage and approval by the Governor or upon its otherwise becoming law.

2013 Ky. Acts ch. 7, § 19.

Even the most liberal reading of Plaintiffs' complaint fails to allege any reason why the legislature's emergency designation was improper, or how that designation denied them any sort

of "process" they were due.[4]  The complaint seems to suggest that the legislature's emergency designation resulted in Plaintiffs being denied the opportunity to present their case before the Fund's board of trustees before the legislature could amend the Act.  However, Section 530—the section of the Act on which Plaintiffs rely in their complaint—does not give them the right to any such hearing.  That section of the Act concerns only who manages the Fund.  *See* KRS 67A.530 (explaining that the "responsibility for the proper operation of the fund" is vested in the twelve-member board of trustees made up of various officials or employees of the LFUCG, the police and fire chiefs, one retired member of the Fund and two active members of the Fund from each department).

Moreover, even if Plaintiffs made their case before the board of trustees, the board cannot pass any piece of legislation—only the legislature can.  *See, e.g., Legislative Research Comm'n v. Brown*, 664 S.W.2d 907, 915 (Ky. 1984) (holding that only the legislature can make a law and cannot delegate that power to anyone else).  Therefore, a hearing before the board of trustees would have had no effect on the legislature's ultimate decision to amend the Act.  And besides, any argument that Plaintiffs were left out of the board's decision-making process is belied by the fact that KRS 67A.530 clearly provides that one retired and two active members of the Fund sit on the board of trustees; the interests of Plaintiffs, both of whom are retired LFUCG employees and members of the Fund, were represented and probably taken into account.  Plaintiffs' argument in this regard seems to be a generalized grievance against the legislature and board of trustees.  The district court therefore did not err when it held that Plaintiffs failed to state a plausible procedural due process claim.

---

[4]Moreover, Plaintiffs' challenge to the legislature's emergency designation is moot.  As the Kentucky Supreme Court has explained, if the emergency clause of an otherwise valid statute is invalid, then the statute takes effect at the time it would have become law without an emergency clause.  *See Lyttle v. Keith*, 95 S.W.2d 299, 300 (Ky. 1936).  The default rule in Kentucky is that a law becomes effective "ninety days after the adjournment of the session at which it was passed."  Ky. Const. § 55.  Plaintiffs filed their complaint on September 11, 2013—well after the ninety days from the date the amendments were passed (*i.e.*, on March 14, 2013).  Therefore, by the time Plaintiffs filed their complaint, the amendments had become effective by operation of the default rule.

### iii.          *Substantive Due Process*

Again assuming *arguendo* that Plaintiffs have a protected property interest, the next question is whether their complaint states a plausible claim that the 2013 amendments were without any rational basis.

Plaintiffs do not premise their substantive due process claim on any express constitutional guarantee or fundamental right. Rather, their challenge is premised on a lack of rational basis. "[L]egislation that does not proscribe fundamental liberties . . . violates the Due Process Clause where it imposes burdens without any rational basis for doing so." *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010) (citations and quotation marks omitted). Such legislation is "endowed with a presumption of legislative validity, and the burden is on [the challenger] to show that there is no rational connection between the enactment and a legitimate government interest." *Id.* (alteration in original) (citations and quotation marks omitted). This rational basis standard "is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007).

In describing the rational basis standard for constitutional claims not involving a fundamental right, we have explained that "the party challenging a legislative enactment subject to rational basis review must negative every conceivable basis which might support it." *Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011) (citations and quotation marks omitted). Under this standard of review, "it is constitutionally irrelevant [what] reasoning in fact underlay the legislative decision." *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (alteration in original) (citations and quotation marks omitted). Accordingly, "if a statute can be upheld under any plausible justification offered by the state, or even hypothesized by the court, it survives rational-basis scrutiny." *Am. Exp. Travel Related Servs.*, 641 F.3d at 690.

When it amended the Act, the Kentucky General Assembly explained its basis for doing so: to keep the Fund financially sound and resolve its financial difficulties. *See* 2013 Ky. Acts ch. 7, § 19. Substantive due process requires only that the legislature show that its amendments

to the Act, in order to reduce the annual COLA paid to members of the Fund, were rationally related to a legitimate government interest. *Am. Exp. Travel Related Servs.*, 641 F.3d at 690. Thus, to present a valid claim for substantive due process, Plaintiffs were required to plead enough facts to sufficiently allege that the amendments were without any rational basis. But the only allegation they have in their complaint is that "[t]here is no rational connection between the amendments to the Act and any legitimate government interest." (R. 1 at 17, ¶ 74.) This allegation is nothing more than a recitation of an essential element of a claim, not sufficient to withstand a Rule 12(b)(6) motion to dismiss. Based on *Iqbal* and *Twombly* pleading standards, there is no fair way to read the complaint other than as having failed to state a substantive due process claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The district court therefore did not err when it held that Plaintiffs failed to state a plausible substantive due process claim.

### c.          *Takings Clause*

The third issue is whether Plaintiffs stated a plausible Takings Clause claim. Plaintiffs' complaint alleges that the amendments to the Act constituted an unconstitutional taking of their constitutionally protected property interest to a fixed rate COLA in violation of the Fifth Amendment.

The Takings Clause of the Fifth Amendment prohibits taking "private property . . . for public use, without just compensation." U.S. Const. amend. V. The clause applies to state governments through the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). We have articulated a two-part test in evaluating claims that a governmental action constitutes a taking of private property without just compensation. First, "the court must examine whether the claimant has established a cognizable property interest for the purposes of the Just Compensation Clause." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004) (internal quotation marks omitted); *see also Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 683 (6th Cir. 2004) ("[T]here is no taking if there is no private property in the first place."). Second, "where a cognizable property interest is implicated, the court must consider whether a taking occurred." *Coalition for Gov't Procurement*, 365 F.3d at 481.

The Takings Clause is about what happens when property is taken for public use. Thus, success on Plaintiffs' Takings Clause claim necessarily implies that they actually had a protected property interest. Indeed, every court to have found no contractual right to a specific COLA formula has concluded that such a finding would foreclose the Takings Clause claim. *See, e.g., Me. Ass'n of Retirees*, 758 F.3d at 32 n.12; *Frazier*, 2015 WL 9309123 at *6 ("The analysis on the Contracts Clause and Due Process Clause Claims above essentially foreclose a Takings Clause Claim as well."); *Zucker*, 758 F.2d at 640 ("Such an expectation [of entitlement to specific COLA increases] does not rise to the level of property protected by the [T]akings [C]lause.") (quotation marks omitted); *Justus*, 336 P.3d at 213 ("[S]ince we have determined that retirees have no property right in a particular COLA . . . their Takings claims and Due Process claims necessarily also fail."); *Bartlett*, 316 P.3d at 896 (same); *see also Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys.*, 173 F.3d 46, 59 (1st Cir. 1999) ("Only if we determine that plaintiffs had a constitutionally protected contract right to the excess benefits can we consider whether the state took that contract right without just compensation.").

Since we have already determined that Plaintiffs have no property right in a particular COLA, *see* Sections II.A-B, *supra*, we need not address this issue. Therefore, because Plaintiffs have no property right in a particular COLA, their Takings claim necessarily also fails.

In sum, we find that the 2013 amendments did not violate the Contract, Due Process, and Takings Clauses of the Federal Constitution. Plaintiffs' remaining state law claims fail in the absence of a violation of federal law. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). The district court therefore did not err when it dismissed Plaintiffs' case for failure to state a claim.

## III.　Plaintiffs' Motion For Leave to Amend their Complaint

The final issue in this case is whether the district court erred when it denied Plaintiffs' motion for leave to amend their complaint. We review a district court's decision to deny a plaintiff's motion to amend his complaint for an abuse of discretion. *See Crawford v. Roane*,

53 F.3d 750, 753 (6th Cir. 1995).  However, when reviewing the district court's decision to deny a motion to amend based on the conclusion that the proposed amendment would be futile (*i.e.*, that it would not withstand a motion to dismiss), we apply a *de novo* standard of review.  *United States ex rel Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016).

When a Rule 15(a) motion is presented after a judgment against the plaintiff, courts must consider the "competing interest of protecting the finality of judgments and the expeditious termination of litigation."  *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615-16 (6th Cir. 2010) (citations and quotation marks omitted).  Otherwise, "plaintiffs could use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision."  *Id.* at 616 (citations and quotation marks omitted).

Following the district court's grant of dismissal in favor of Defendants, Plaintiffs moved for leave to file an amended complaint.  The proposed amended complaint did not vary in any material way from the original complaint as to its factual allegations; it merely included four additional paragraphs offering more legal conclusions about how the Act supposedly created contractual rights.  The district court subsequently denied Plaintiffs' motion because Plaintiffs did not allege facts sufficient to state any cognizable claims for relief.

As an initial matter, it is not clear whether Plaintiffs press their amendment claim on appeal.  They request reversal of the district court's denial of their motion to amend the complaint, but develop no argument in their brief.  To preserve an issue for appellate review, a party is required to address the issue in its appellate briefing.  *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 304 (6th Cir. 2012) (citation omitted); *see also Middlebrook v. City of Bartlett*, 103 F. App'x 560, 562 (6th Cir. 2004) ("The failure to present an argument in an appellate brief waives appellate review.") (citation omitted).  As we recently explained, addressing an issue on appeal "requires developed argument; a party is required to do more than advert to an issue in a perfunctory manner."  *Bolden v. City of Euclid*, 595 F. App'x 464, 468 (6th Cir. 2014) (citation omitted).  Therefore, by failing to make any developed argument in their briefing, Plaintiffs waived appellate review of the district court's denial of their post-judgment motion to amend.

But even if Plaintiffs had not waived the claim, we would still affirm the district court's decision.  In an effort to strengthen their claim, Plaintiffs attached to their proposed amended complaint a legislative history of the Act.  These were the same materials that had been provided to the court before it dismissed the suit—defendant LFUCG attached these same materials to its motion to dismiss.  The district court was therefore already aware of whether there was anything in the Act that would warrant granting leave to amend.  Because the revised complaint added nothing new to the factual issues, the district court correctly determined that Plaintiffs failed to state a claim.  Therefore, it would be futile to allow them to amend the complaint.

**CONCLUSION**

For the reasons stated above, we **AFFIRM** the district court's judgment.

_____

## CONCURRENCE

_____

STRANCH, Circuit Judge, concurring.  I concur in the majority opinion because I agree that Plaintiffs' Contract Clause claim, as alleged, does not clear the hurdle of unmistakability, the doctrine governing claims that a state legislature intended to create a private contractual right by statute.  Specifically, Plaintiffs' allegations regarding the statutory language (and the lack of allegations identifying legislative history, bargaining negotiations, or other facts evidencing legislative intent) together fail to provide a basis to infer reasonably an unmistakable intent on the part of the Kentucky legislature to create a contractual right to a specific COLA formula for Plaintiffs.

I write separately, however, to address a few supporting statements in our opinion upon which its legal conclusions do not rely—statements that I find too broadly worded or with which I disagree.  First as to the "Guidance from Other Courts" section, I do not dispute that because the unmistakability doctrine is a difficult standard to satisfy, many claims that a state legislature intended to contract with public employees for a fixed COLA have failed.  But I do not think that such results suggest there exists a majority position.  (Op. at 12.)  Because Contract Clause claims require analysis of a specific legislature's intent, each claim necessarily depends upon the particular statutory scheme and all the surrounding circumstances.  Our opinion accordingly acknowledges a case finding a contractual right to a COLA under a different statute and state constitution.  *Hon. Fields v. Elected Officials' Ret. Plan*, 320 P.3d 1160, 1163–66 (Ariz. 2014).  It is not an outlier.  Other courts—analyzing different statutory and state constitutional provisions, COLA provisions, and surrounding circumstances—have found a contractual right to a specific COLA formula.  *See Miller v. Ret. Bd. of Policemen's Annuity*, 771 N.E.2d 431, 438–40 (Ill. 2001); *Kleinfeldt v. N.Y.C. Emp.'s Ret. Sys.*, 324 N.E.2d 865, 868–69 (N.Y. 1975).

Whether a group of state employees can make an enforceable claim for a COLA simply depends on the facts of each case, including whether documents evidencing the genesis of the COLAs were created and maintained, a problem for Plaintiffs in this case.  As a result, general conclusions are not necessarily helpful.  Here, I do not agree with the comment that "it does not

make sense that the legislature would bind itself to a fixed COLA." (Op. at 12–13.) Contracting for a set COLA can make eminently good sense. A state legislature, like any employer, wants to attract and retain high-quality employees. Those public employees—firefighters, police officers, teachers, and others—serve and protect the community, which includes the legislators and the citizens who vote them into office. A COLA that is guaranteed not to decrease below a certain range of rates can encourage employees to begin and remain working for the government, despite the relatively low wage rates that often accompany public-service jobs.

I also do not agree with the Federal Circuit's conclusion that COLAs cannot be more than a "government fostered expectation" until paid. *See Zucker v. United States*, 758 F.2d 637, 640 (Fed. Cir. 1985). (Op. at 11.). When a state legislature tells its public employees that they will have a pension and a COLA and those employees provide the corresponding years of service, that promise seems to me much more a moral obligation than a mere "government fostered expectation." But I do not dispute that the unmistakability doctrine governs state statutory cases brought by public employees and entails a difficult burden to plead or prove. I concur because this case is unable to meet that burden.